**Howard M. IBBITSON**

v.

**The SHERIDAN CORPORATION and American Mutual Liability Insurance Company.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1980.

Decided Nov. 21, 1980.

---

Sherman & Ringer by Alan C. Sherman (orally), Waterville, for plaintiff.

Mitchell & Stearns by Stephen J. Burlock (orally), Bangor, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

WERNICK, Justice.

Howard M. Ibbitson, a worker who was employed by the Sheridan Corporation (Sheridan), has appealed from a pro forma decree of the Superior Court (Kennebec County) affirming the Workers' Compensation Commission's decision on a Petition for Review of Incapacity filed by the employer. The Commission decided that the worker's incapacity had been reduced from total to partial and that he be paid compensation on the basis of 50% partial incapacity. On appeal, the single point is raised that the Commission erred in evaluating the function, and in consequence the adequacy, of evidence presented by the worker as to his efforts to find remunerative work.

We deny the appeal and affirm the pro forma judgment of the Superior Court.

After the worker, on January 17, 1979, suffered a back injury in the course of his employment at the Sheridan Corporation when a falling plank struck him on the head and shoulder, an approved agreement was made that the worker be paid compensation for total incapacity. On March 26, 1979 the employer filed a Petition for Review of Incapacity. After hearing, the Commission found that

"since the agreement granting the employee total compensation . . ., the employee's condition has improved",

but he continues to "have some incapacity." The Commission then proceeded to evaluate evidence the worker had presented, bearing on his contention that despite his having regained some physical ability to perform remunerative work, he was entitled to compensation for total incapacity because the work–related limitations still causing some impairment in his ability to work prevented his obtaining work in the labor market within his community. In its evaluation the Commissioner said:

"The employee testified that he looked for work in seven different places, however the evidence does not *establish* that he was turned down due to his back problem. . . . [T]he evidence falls short of *establishing* a good faith search effort [by the worker] within . . . [his] restrictions . . . ." (emphasis added)

The Commission's use of the word "establish", and its mention that evidence offered by the worker fell "short of establishing" a proposition, strongly suggest that the Commission committed the error of subjecting the worker to an ultimate burden of proof as to facts to be found in a proceeding in which the employer, as a petitioner for review of incapacity, is the moving party having a never–shifting ultimate burden of proof on all the evidence.

In this regard, we have become aware of possibly misleading language in some of our recent decisions. To clarify the meaning of those decisions and avoid further misunderstanding, we find it necessary to review the origin in Maine law of the distinction between the ultimate burden of proof on all the evidence and the burden of coming forward with evidence, in specific relation to the principle that a worker who has recovered some capacity to work may nevertheless be entitled to compensation for total incapacity.

▮▮ This relationship was first explored in detail in *Pelchat v. Portland Box Co. Inc.*, 155 Me. 226, 153 A.2d 615 (1959), and the principles there formulated and applied continue to be the law of this state. In *Pelchat* this Court reaffirmed the law, previously established in *Ray's Case*, 122 Me. 108, 119 A. 191 (1922), that a worker may continue to be entitled to compensation for total incapacity even though he may have recovered some physical ability to work, where persisting effects of his work–related injury are preventing him from engaging in remunerative work. *Pelchat* addressed this legal proposition in the context of an employer who has filed a Petition for Review of Incapacity seeking an adjudication that the worker is no longer entitled to be paid compensation for total incapacity.

▮▮ *Pelchat* made explicitly plain that as the moving party, the employer has the ultimate burden of proof on all the evidence, which never shifts, to establish as more probable than not that the worker's incapacity has changed from total to partial. *Pelchat* further explained, however, that even though the employer has this never–shifting ultimate burden of proof as to all the facts underlying the determination whether the worker has ceased to be totally incapacitated, it does not follow that the employer is required *in the first instance* to come forward with evidence as to *all* such facts. Rather, as to some facts, a first–instance burden to come forward with

evidence rests on the worker, and it is only if, and when, the worker has discharged his burden as to those facts that they fall within the compass of the employer's ultimate burden of proof on all the evidence.

*Pelchat* clarified this distinction by delineating a process to be followed by the Commission in evaluating the evidence presented. The employer's ultimate burden of proof requires that in the first instance the employer shall have come forward with evidence sufficient to show that more probably than not the worker has recovered some ability to perform a kind of work that is "ordinarily" available for remuneration in the competitive labor market. If the Commission believes, and accepts as sufficient, this first–instance evidence produced by the employer, the Commission takes the employer to have made a "prima facie" case that the worker's incapacity is no longer total. The reason is that the law deems it reasonable and fair that *absent other evidence*, a finding should flow from a worker's having regained some ability to perform work "ordinarily" available for remuneration in the competitive labor market that it is more probable than not that such work is available to this particular worker.

It is on this rationale, then, that *Pelchat* evolves the conception of a burden resting on the worker to come forward with evidence. Once the Commission believes and accepts the evidence presented by the employer in the first instance,[1] so that the Commission takes the employer to have made out a "prima facie" case that the worker's incapacity is no longer total, the Commission then lacks rational basis for deciding against the employer, *if* no other evidence has been presented bringing into question the legitimacy of the inference, as "prima facie" warranted, that because the kind of work for which the worker has recovered some ability to perform is "ordinarily" available for remuneration in the competitive labor market, it is so available to this particular worker, disabled in part as

1. If the Commission does not accept as credible, or sufficient, the evidence produced by the employer in the first instance, the employer has obviously failed to meet his ultimate burden of proof and the Commission must decide against him.

he is. Since in the first instance the employer's ultimate burden of proof does not require the employer to come forward with such evidence, the Commission looks for it as produced by the worker, and if it has not been produced to offset the "prima facie" case made out by the employer, the Commission concludes that the worker's incapacity is no longer total. It is in this sense that in the process of evaluating the evidence, the Commission is to take the worker to have a *burden to come forward with evidence.*

*Pelchat* further explains the content of the evidence the Commission looks for as meeting this burden of production borne by the worker. The evidence should disclose that the worker made a reasonable exploration of the labor market in his community for the kind of work he has regained some ability to perform and that he was unable to obtain such work for remuneration either because no stable market for it existed or, if there was such a market, the work was not available to *him* by reason of the continuing limitations, caused by his work–related injury, upon his ability to perform it.

When, in evaluating the evidence, the Commission ascertains that there has been presented evidence that meets the worker's burden of production, then the Commission must look to the employer's never–shifting ultimate burden of proof on all the evidence as operative to require that the totality of the evidence show that it is more probable than not that persisting effects of the worker's work–related injury lack causative relation to the worker's opportunities for remunerative work in the work–market of his community. It could well be that the Commission would not be willing to reach this conclusion on all the evidence, depending on the cogency of the evidence produced by the worker, unless the employer had gone beyond the burden of production borne by him *in the first instance* and had taken the precaution to come forward with evidence (after the worker had produced his evidence) regarding what work the market–place made available to the worker, as tending to offset

what was shown by the evidence the worker had produced.

We have reviewed in this detail the analysis in *Pelchat* to clarify precisely what this Court decided in *Martel v. United States Gypsum Company*, Me., 329 A.2d 392 (1974), and to remove possible misunderstanding of that decision because of the particular language appearing in it:

"[T]he Commissioner ... concluded that the employer had failed to prove [that] such work [as the worker could perform within the tolerance of the limited work capacity he had recovered] *was* available to the employee in spite of his limited capacities. But the Commissioner was in error in giving the employer *this* burden of proof." (emphasis in original) *Id.*, at 395.

As the analysis of *Pelchat* has shown, this language would be interpreted erroneously were it taken to mean that to discharge the ultimate burden of proof an employer bears by reason of his having filed a petition for review of the incapacity of a worker being paid compensation for total incapacity, the employer may *never* have a burden to show by a preponderance of all the evidence that there was available to the worker in the labor market in his community such kind of work as he had regained some physical ability to perform and as was within the tolerance of the limitations he still had. Quite to the contrary, the employer's ultimate burden of proof on all the evidence may require such proof by the employer when the worker *has come forward* with "adequate" evidence that, in the language of *Martel*,

"he had made reasonable efforts to obtain such work [as he had recovered some capacity to perform] and had failed, either because such work was unavailable in the area or that it was unavailable to *him* by reason of his injury." (emphasis in original) *Id.*, at 396.

Where the worker *has* come forward with such evidence, the never–shifting ultimate burden of proof borne by the employer may well require a showing by the employer, if he is to prevail, that it is more probable

than not that there is available to the worker in the competitive labor market of his community such kind of remunerative work as the worker can perform and as is within the tolerance of the limitations still existing on his physical ability to work.

*Martel* decides nothing to the contrary. In *Martel* the Commissioner's decision that the employer had failed to meet its ultimate burden of proof on all the evidence was made on a record disclosing, because of express statements made by the Commissioner, that his evaluation of the evidence produced by the worker as to his search for work was not a sufficient evaluation of that evidence in terms of its *adequacy* to meet *the burden of coming forward* resting on the worker. For this reason, as well as because of other language used by the Commissioner regarding the employer's ultimate burden of proof and what it might require of the employer in the first instance, the record in *Martel* strongly suggested that the Commissioner thought that the "adequacy" of evidence produced by the worker had no bearing; and that this was so because the ultimate burden of proof on all the evidence borne by the employer required that in the first instance the employer produce evidence showing it more probable than not that the competitive labor market in the worker's community made available to the worker such kind of work as he had recovered some ability to perform and as was within the tolerance of his still existing limitations to perform it. The decision in *Martel* was that this was an erroneous conception of the law of Maine, and therefore a remand of the case was necessary for further proceedings to clarify that no such error had been committed.

The analysis we have made of *Pelchat* and *Martel* clarifies, too, the meaning of n.1 in *Bowen v. Maplewood Packing Co.*, Me., 366 A.2d 1116, 1119 (1976) reading:

> "We note in passing that Maine precedent casts no burden on the employer either to offer the employee work or to prove that some particular work is available in the community which the employee could perform. *Martel v. United States Gypsum Company*, Me., 329 A.2d 392

(1974); *Connelly's Case*, 122 Me. 289, 119 A. 664 (1923)."

This statement is to be interpreted as referring only to the employer's *burden to come forward* with such evidence *in the first instance*. It does not exclude the possibility of a need to produce evidence of such tenor, *once the worker has met his burden to come forward with evidence* and has thereby generated the necessity that the employer, charged with the ultimate burden of proof on all the evidence, establish as more probable than not that effects of the worker's work–related injury have ceased to have causal relation to the worker's being unable to have any work for remuneration in the labor market of his community. That this is the correct interpretation of the footnote is further shown by the fact that it cites *Connelly's Case*, 122 Me. 289, 293, 119 A. 664 (1923) as authority for the statement. True, the same statement appears in *Connelly's Case*. It appears there, however, subject to the important qualification that it operates only

> "[i]f he [the worker] fails to use reasonable efforts to find work such as he could perform or insists that he could not perform it, if available, . . . ."

In light of our clarifying analysis, we turn to the problem confronting us in this appeal: the meaning of the Commission's language that the evidence produced by the worker as to his work search "does not *establish* that he was turned down due to his back problem" and therefore "[t]he evidence falls short of *establishing* a good faith search effort . . . ."

This language could mean that the Commission correctly conceived that the worker was subject only to a burden to come forward with evidence and that the word "establish" expressed that the evidence the worker presented was inadequate to satisfy that burden. Yet, the word "establish" could also signify, especially because of the possibilities of misunderstanding that may previously have arisen from the ambiguities in *Martel* and *Bowen* we have clarified herein, that the Commission incorrectly con-

ceived the worker to bear, in some respect, an ultimate burden of proof on all the evidence.

Either way, however, we conclude that the Commission's decision should stand. If the Commission deemed the worker to bear only a burden to come forward with evidence, the Commission was legally correct in determining that the evidence produced by the worker was inadequate to meet his burden of coming forward. On the other hand, if the Commission committed the error of deeming the worker to bear some ultimate burden of proof, we conclude that the error was harmless. The record makes plain that the Commission believed the evidence presented by the employer, and therefore, the evidence presented by the worker being as a matter of law inadequate to meet his burden of production, the decision in favor of the employer was correct in any event.

The criterion for assessing the "adequacy" of evidence to meet the worker's burden of producing evidence flows from the reason that burden was established, as well as the objective to be achieved by requiring it be met. As this Court stated in *Pelchat*, after analyzing *Connelly's Case, supra,* a showing by the employer that the worker has recovered some capacity to perform a kind of work that is "ordinarily" remunerated in the competitive labor market satisfies the "initial burden of going forward" the employer bears as an incident of his ultimate burden of proof, as well as that ultimate burden of proof itself in the absence of other evidence. This is so because it is reasonably to be expected, until something to the contrary appears in a particular situation, that what is thus "ordinarily" available will be available in a given instance. Hence, in establishing a system for imposing responsibility on the respective parties to come forward with presentations of evidence, this Court thought it "neither unreasonable nor unfair" to impose on the worker a burden of coming forward with evidence that he had made a reasonable exploration of the competitive labor market for work of the kind he had regained some capacity to perform and that he found ei-

ther there was no stable market for such work or, if it was available, it was not available to him because of the still existing limitations on his regained capacity to work. *See Pelchat, supra,* at 229–30; *Martel v. United States Gypsum Company, supra,* at 394; *Bowen v. Maplewood Packing Co., supra,* at 1118–19.

In view of this rationale for placing a burden to come forward on the worker, it is plausible to evaluate the "adequacy" of evidence to satisfy that burden by the criterion of whether the evidence has a rational tendency to offset the reasonableness of continuing to believe that work "ordinarily" available in the competitive labor market will not be denied to this particular worker because of the still existing effects of the work–related injury he sustained.

█ Accordingly, before it may be fairly said that the evidence produced by the worker as to "work search" has satisfied the burden of production he bears, that evidence should be "adequate" in the sense that it should at least give a rational person reasonable cause to believe that the work–related injury this particular worker sustained is preventing him from obtaining remunerative work "ordinarily" available in the competitive labor market of his community. Such reasonable cause will arise where the worker's exploration of the labor market in his community discloses a number of search experiences manifesting a "pattern", *see Overlock v. Eastern Fine Paper, Inc.* Me., 314 A.2d 56, 59 (1974), quoted in *Bowen v. Maplewood Packing Co., supra,* at 1120, from which it becomes reasonable to infer either that a stable market for the kind of work the worker has regained some ability to perform does not exist in his community, or, if such a market does exist, that work will not be made available to this particular worker because of the persisting effects of the work–related injury he sustained.

█ In the case at bar the evidence produced by the worker related to seven employment application experiences. As to five of them, it was plain that the employ-

ers were hiring no one to perform any kind of work. Regarding the other two experiences, the evidence left highly ambiguous whether the reason for the worker's not being hired related either to the kind of work he could do, or the way he would be doing it. In any event, the circumstances involved manifestly were not such as could rationally be deemed a "pattern" of employment application experience giving reasonable cause to believe that the work–related injury suffered by the worker was still preventing him from being employed to perform some remunerative work.

The evidence produced by the worker was therefore inadequate as a matter of law to satisfy the burden of production imposed on him. This being so, since the Commission's other finding that the worker had recovered some ability to work must be upheld as supported by the evidence, the law requires that the Commission's ultimate determination that the worker's incapacity had changed from total to partial be sustained, notwithstanding that the Commission may have reached that determination by relying on an erroneous standard for evaluating the adequacy of the worker's evidence as to work search.

The entry is:

Appeal denied; pro forma judgment of the Superior Court affirmed.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00 together with his reasonable out–of–pocket expenses for this appeal.

All concurring.