Mary CAMPBELL

v.

BATES FABRICS, INC.

Supreme Judicial Court of Maine.

Argued Sept. 4, 1980.

Decided Dec. 4, 1980.

Cote, Cote & Hamann, P.A., Richard G. Hamann (orally), Paul A. Cote, Lewiston, for plaintiff.

Norman & Hanson, John M. Wallach (orally), Theodore H. Kirchner, Portland, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

---

GLASSMAN, Justice.

The employee, Mary Campbell, appeals from a pro forma decree of the Superior Court, Androscoggin County, implementing a decision of the Workers' Compensation Commission awarding her a lump sum payment of $8,627.25 for permanent impairment pursuant to the Maine Workers' Compensation Act, 39 M.R.S.A. § 56. Campbell contends that if the Commission had properly construed Section 56 to include the Act's "inflation–deflation adjustment provision" she would have been entitled to nearly $2,000.00 more. We affirm the pro forma decree.

On June 16, 1977, Mary Campbell sustained work–related injuries to her right arm and leg. Apparently totally incapacitated following her injury, she shortly thereafter entered into an agreement with her employer for compensation at the rate of $115.03 per week pursuant to 39 M.R.S.A. § 54. In August, 1977, the Commission approved this agreement. Adjusting the $115.03 figure for inflation, the Commission set the employee's weekly compensation rate at $125.53.

Two years later, Campbell had not fully recovered the usefulness of her arm or leg. On August 13, 1979, she filed a petition to determine the extent of permanent impairment pursuant to Section 56. Before hearing on the petition, she and her employer stipulated that the permanent impairment of her right leg was 30% and that of her right arm 7½%. Subsequently, hearing was waived and, on December 31, 1979, the Commission issued a decree reflecting these stipulated percentages. There is no issue with regard to the percentages, but, having adopted them, the Commission ordered a lump sum payment of $8,627.25. This sum was computed using a weekly compensation rate of $115.03. Had that weekly rate been adjusted for inflation, then as of the date of the inflation adjustment last preceding the decree, July 1, 1979, the rate would have been $139.20. When multiplied by the scheduled period of total incapacity set forth in Section 56, the difference between the weekly rate of $115.03 and the weekly rate of $139.20 would result in a lump sum payment of $1,812.75 more than awarded.

The "inflation–deflation adjustment provision" was added to our compensation scheme by An Act Relating to Compensation Under Workmen's Compensation Law for Total Incapacity, Partial Incapacity and Death, P.L.1971, ch. 225 (effective January 1, 1972). The adjustment was expressly made applicable to weekly compensation for death,[1] temporary total incapacity,[2] temporary partial incapacity[3] and permanent total incapacity.[4] The statute did not expressly make the adjustment applicable to lump sum payments for permanent impairment pursuant to Section 56.

Campbell relies on that portion of Section 56 which provides:

[T]he injured employee shall receive a lump sum payment for said injury which shall be determined by multiplying the amount to which he would be entitled weekly for total incapacity as determined under section 54, by the period of presumed total incapacity set forth in this section.

From this language Campbell argues that it was the legislative intention to incorporate by reference into Section 56 the inflation–deflation adjustment expressly enacted in Section 54. We reject this contention.

The payments for permanent impairment under Section 56 are not dependent upon wage loss but are paid even though the employee may have sustained no actual diminution of wages.[5] The inflation–defla-

1. 39 M.R.S.A. § 58 as amended by P.L.1971, ch. 225, sec. 4.

2. 39 M.R.S.A. § 54 as amended by P.L.1971, ch. 225, sec. 1.

3. 39 M.R.S.A. § 55 as amended by P.L.1971, ch. 225, sec. 3.

4. 39 M.R.S.A. § 54 as amended by P.L.1971, ch. 225, sec. 2.

5. At one time a claimant could not receive double compensation for the same injury by receiving wage–replacement compensation as presently provided under Section 54 and permanent impairment compensation as presently provided under Section 56. See Phillips' Case,

**1016**

tion adjustment was designed to protect wage–replacement compensation from shrinkage resulting from inflation and to protect the system from excessive payments of wage–replacement compensation during periods of deflation. *See Bernard v. Cives Corp.*, Me., 395 A.2d 1141, 1148 (1978). There is no reason to apply the adjustment to non–wage–replacement lump sum payments made pursuant to Section 56. This conclusion is bolstered by the Report of the National Commission on State Workmen's Compensation Laws in which it was noted:

> Impairment benefits are justified because of losses an impaired worker experiences that are unrelated to lost remuneration. The impairment may, for example, have lifetime effects on the personality and normal activities of the worker. Since impairment benefits have no relationship to wage loss, there would be no necessity to link the value of the weekly benefits to the worker's own weekly wage; the weekly benefits could be the same

amount for all workers in the state. Report of the National Commission on State Workmen's Compensation Laws 69 (1972).[6]

For these reasons, we conclude there was no error in the Commission's computation of the award of permanent impairment benefits to the appellant, Mary Campbell.

The entry is:

Pro forma decree affirmed.

It is further ordered that the employer pay to the employee $550 for her counsel fees plus her reasonable out–of–pocket expenses for this appeal.

All concurring.

123 Me. 501, 124 A. 211 (1924); *Foster's Case*, 123 Me. 27, 121 A. 89 (1923). In 1965, Section 56 was amended to state expressly that payments under that section were "[i]n addition to the benefits provided for in sections 54 and 55 ...." P.L.1965, ch. 408, sec. 5. This same statute eliminated any limitation on the number of weeks that compensation for temporary total incapacity was payable. P.L.1965, ch. 408, sec. 3. In 1973, the Legislature repealed the limitation on the number of weeks that compensation for temporary partial incapacity was payable. P.L.1973, ch. 531, sec. 1. Thus, to the extent that an employee sustains wage loss as a result of total or partial incapacity, he may receive compensation under Section 54 or Section 55. Since the compensation provided under Section 56 is "in addition to" the

compensation payable under Section 54 and Section 55, it is not dependent on actual wage loss.

**6.** The Maine Legislature anticipated the National Commission's report by enacting the inflation–deflation adjustment prior to publication of the report. *See* notes 1 through 4 *supra*. The Commission did recommend such a provision for all "weekly benefits." Report of the National Commission on State Workmen's Compensation Laws, Recommendation 3.10 (1972). We therefore find the comments of the National Commission helpful in analyzing our statutory enactment of the inflation–deflation adjustment.