## Ira WARREN

v.

## VINALHAVEN LIGHT & POWER COMPANY and Employers' Commercial Union Insurance Company.

Supreme Judicial Court of Maine.

Argued Nov. 6, 1980.

Decided Jan. 21, 1981.

---

Edward B. Miller (orally), Rockland, for plaintiff.

Norman & Hanson, Theodore H. Kirchner (orally), John M. Wallach, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN, ROBERTS and CARTER, JJ.

WERNICK, Justice.

The employer, Vinalhaven Light and Power Company (and its insurer, Employers' Commercial Union Insurance Company) appealed from a pro forma judgment of the Superior Court (Knox County), which affirmed a decision of the Workers' Compensation Commission "dismissing"[1] the employer's Petition for Review of the Incapacity of its employee, Ira Warren (worker).

We deny the appeal and affirm the judgment.

On July 8, 1971 the worker fell while at work and sustained multiple fractures of both feet and a compression fracture of the fourth lumbar vertebra. Under an approved agreement the worker was paid compensation for total incapacity to earn from the date of his fall. On September 13, 1978 the employer filed the Petition for Review of Incapacity which is now before us. Hearings were had at which the worker testified, as well as an orthopedic surgeon, Dr. Robert Furman, who had treated the worker from the time he sustained his injury.

Describing the worker's current condition as "post-traumatic arthritis of both feet, secondary to multiple fractures, dislocation of the joints, the balls of both feet . . .," Dr. Furman testified that the worker could not

---

1. The Commission decided the merits of the employer's Petition and therefore should have "denied", not "dismissed", it. For purposes of this appeal, we treat the Petition as having been denied.

do work requiring prolonged, or sustained, standing or walking but would be able to perform a sedentary job.

The worker gave the following testimony. He had lived on Vinalhaven Island for all of his forty-eight years. His injury caused his feet to become swollen and painful when he stood for more than thirty minutes at a time. After he had been hurt, he tried to work at several different jobs available on the island; in 1972, for example, he had made several fishing and lobstering trips, and in 1975 he had assisted in the construction of a power line. He learned from these experiences that he could not continue to work at such kinds of jobs because they required standing or walking that caused him too much pain. During the past several years, the worker has earned approximately $300 each year by performing odd jobs around the island available, primarily, in the summertime.

The worker also testified about his efforts to return to the work force of the island. Acknowledging that he had not canvassed the island's employers in search of a sedentary job, he asserted that as a life long resident of Vinalhaven Island, he had abundant knowledge about the opportunities for employment on the island, and he knew of no sedentary jobs on the island for which a person, disabled as he was, would be hired.

The Commissioner decided that even though the worker was shown to have regained a 30% physical ability to work, he remained totally incapacitated to work for remuneration because the evidence showed "lack of a job market for employees with his incapacity within his work area." [2]

The employer's contention on appeal is that the evidence was insufficient to support the Commission's conclusion as to "lack of a job market." We disagree.

■ Recently, in *Ibbitson v. Sheridan Corporation*, Me., 422 A.2d 1005 (1980), we carefully analyzed the nature of the burdens resting upon the employer and the worker in relation to an employer's Petition for Review of Incapacity. We explained that the worker never has an ultimate burden of proof as to any issue precipitated by such a Petition but can become subject to a burden to come forward with evidence ("burden of production"). Thus, where the evidence shows that a worker has recovered some ability to perform the kind of work ordinarily available for remuneration in the competitive labor market of his community, the worker cannot be held to remain entitled to compensation for total incapacity to earn unless at least some evidence has been produced (1) as to lack of a stable job market for the kind of work ordinarily available in his community which he has regained some ability to perform, or (2) that if there is such a current job market in the worker's community, limitations, attributable to his work-related injury, on his ability to perform such generally available work make it unavailable *to him.*

■ In the case at bar the further issue is raised whether the evidence that can be adequate to satisfy the worker's burden of production must be, and cannot be other than, evidence of a search by the worker for work of the kind he has been shown to have regained some physical ability to perform. Here, because no evidence came forth that the worker had made a search on Vinalhaven Island for work of a sedentary nature, the employer maintains that the worker must be held to have failed to satisfy his burden of production. The premise of this contention appears to be that in this state it has been established as *a rule of substantive law* that, no matter what other evidence the worker may produce bearing on job opportunities in the market place, *unless* he has produced evidence of an actual search by him for the kind of work he has regained some physical capacity to perform, the worker cannot be held entitled, under an employer's Petition for Review of Incapacity, to be paid compensation for total incapacity to earn.

---

2. In reaching this conclusion, the Commissioner held that Vinalhaven Island was the "community" appropriate for evaluating this worker's opportunities for remunerative employment. The employer does not contest the correctness of this holding.

In so conceiving the law, the employer is in error.

We have long recognized that incapacity to earn includes "not merely want of physical ability to work but lack of opportunity to work." *Ray's Case*, 122 Me. 108, 110, 119 A. 191 (1922). This was the foundational conception underlying our analysis in *Ibbitson, supra,* of the respective burdens borne by the employer and the worker in relation to an employer's Petition for Review of Incapacity. As *Ibbitson* clarified, the "adequacy" of evidence to meet the worker's burden of production is measured by the

"criterion of whether the evidence has a rational tendency to offset the reasonableness of continuing to believe that work 'ordinarily' available in the competitive labor market will not be denied to this particular worker because of the still existing effects of the work-related injury he sustained." *Ibid.,* at 1011.

With the issue at stake thus delineated, the basic principle of evidence which should govern is that any evidence *relevant* to the issue, if otherwise competent and not otherwise objectionable, should be admissible for evaluation. Evidence of the results of an actual search for work by the worker, it is true, may be a kind of evidence readily available for the purposes to be served, and, indeed, may be evidence having cogent force. Yet the market place can be so varied and complex in the opportunities it affords that it is neither logical nor practicable to establish an inflexible rule of *substantive* law that evidence other than that of an actual work search by the worker can *never* be adequate to meet the worker's burden of production.

To the contrary, we have previously observed that various kinds of evidence may authorize the Commission to decide that even though a worker's physical ability to work has improved, he nevertheless is precluded by his condition from obtaining remunerative work in his community. In *Ray's Case, supra,* at 111, the worker was permitted to show "a general disinclination on the part of persons requiring help to employ maimed or crippled men when

sound men are available." In *Lacione's Case,* 227 Mass. 269, 116 N.E. 485 (1917), which we cited with approval in *Connelly's Case,* 122 Me. 289, 119 A. 664 (1923) the Massachusetts Court made the point that the entirety of the evidence on which the Industrial Accident Board made its decision, and by which the decision was to be evaluated to assess whether it was supportable, included evidence of tasks performed by the worker during his period of disability. Similarly, in *Foster v. Bath Iron Works Corporation,* Me., 317 A.2d 11 (1974) the Commission had before it evidence of the worker's testimony as to his personal experiences in self-employment ventures, and in *Crocker v. Eastland Woolen Mill, Inc.,* Me., 392 A.2d 32 (1978) we noted that the presence of such evidence was sufficient to make *Foster* distinguishable from *Crocker.* Specifically, we said in *Crocker* that although

"the employee in *Foster* failed to submit proof of efforts to find suitable 'light work,' the record ... reveal[ed] that he attempted several self-employment ventures, including lobstering and selling shrimp by the roadside." *Ibid.,* n.5 at 36.

Proceeding in this vein, we discern no sound reason why a worker should be denied consideration of any competent evidence that is relevant to the question of available opportunities for remunerative work. Such evidence could include the testimony of any person, even of the worker himself, where it is shown that the witness has sufficient knowledge about the community job market to make his testimony relevant to the issues at stake.

In light of the foregoing analysis we now clarify that previous cases which may have used the word "requirement" in their discussions regarding evidence of work search are *not* to be interpreted to have established a hard and fast rule of substantive law to the effect that in each case where an employer's Petition for Review of Incapacity is supported by credible evidence that the worker has regained some physical ability to perform work ordinarily available for remuneration in his community, the worker can satisfy his burden of production (should

he wish a decision that he remains totally incapacitated) *only if* he assures the presence in the record of evidence of a search by him for such work.[3]

 With the law thus clarified, we turn to the evidence presented in the case at bar. Over and above his testimony regarding his unsuccessful efforts at fishing and lobstering, his inability to continue to perform power line work and his performance of various kinds of summertime work available on Vinalhaven Island, the worker testified that being a lifelong inhabitant of the island, he well knew the opportunities it offered for work of a sedentary nature, and he knew that there was no such work on the island that would be available to him.

We decide that this totality of evidence presented by the worker, despite the lack of a showing of an actual canvassing by the worker of the employers of Vinalhaven Island in search of a sedentary job, was sufficient to support a conclusion by the Commission that in the particular circumstances of this case the worker had satisfied his burden of production. This being so, since the employer had failed to come forward with other evidence to

> "establish as more probable than not that effects of the worker's work-related injury have ceased to have causal relation to the worker's being unable to have any work for remuneration in the labor market of his community", *Ibbitson, supra,* at 1010,

the Commission was not clearly erroneous in its ultimate conclusion that the worker remained entitled to be paid compensation for total incapacity to earn.

The entry shall be:

Appeal denied; pro forma judgment of the Superior Court affirmed.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00 together with his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**3.** Representative of recent cases thus mentioning the word "requirement" are *Crocker v. Eastland Woolen Mill, Inc., supra; Gaddis v. Georgia-Pacific Corp.,* Me., 382 A.2d 1045 (1978); and *Bowen v. Maplewood Packing Company,* Me., 366 A.2d 1116 (1976).

In the particular contexts of those cases, in which either there was no evidence whatever as to the state of the job marker (*Crocker*) or there was some evidence as to a work search

(*Gaddis* and *Bowen*), the mention of "requirement" in relation to "work search" as the specific matter that was being discussed could be fairly regarded as a shorthand way of describing the problem arising from the particular posture of the evidence in that individual case, rather than as being a purported pronouncement—dictum in any event in the circumstances—of a categorical rule of substantive law.