Velma **CASEY**

v.

**TOWN OF PORTAGE LAKE.**

Supreme Judicial Court of Maine.

Argued May 20, 1991.
Decided Aug. 6, 1991.

Norman G. Trask (orally) and Richard L. Currier, Currier & Trask, P.A., Presque Isle, for the employee.

Michael J. Dostie (orally), Leen & Emery, Bangor, for employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY,* JJ.

ROBERTS, Justice.

Velma Casey appeals a decision of the Appellate Division affirming the Workers' Compensation Commission. The Commission found that Casey had regained 30% of her pre-injury work capacity and reduced her compensation by 30%. The Commission also held that, pursuant to 39 M.R.S.A. § 62–B (1989), Casey's compensation should be further reduced by an amount equal to 50% of the Social Security retirement benefits she was entitled to receive pursuant to 42 U.S.C. § 402. We affirm.

I.

On December 19, 1985, Velma Casey, a 66 year old widow, broke her right hip in a fall sustained in the course of her duties as the town manager for the Town of Portage Lake. In the succeeding months, Casey's doctor, Gordon Somerville, determined that Casey regained approximately 30% of her pre-injury work capacity. In February 1987, the Town filed a petition for review of incapacity, alleging that Casey's incapacity had "diminished or ended." Subsequently the Town also filed a petition for reduction of benefits pursuant to section 62–B.

The Commission found that Casey had regained 30% of her pre-injury work capacity. In order to determine availability of work, the Commission heard testimony from Casey that, upon regaining work capacity, she put together a resume and, in late June and early July of 1987, sent this resume and cover letter to seven businesses in the Portage/Ashland area. At the time of the hearing on August 26, 1987, Casey had heard from only one of the seven firms to which she had sent copies of the resume. That firm's answer had been negative.** The Commission also considered a labor market survey submitted by the Town. According to this survey, local newspapers during the relevant time period indicated the availability of at least nine appropriate positions and employer contacts indicated two and possibly three additional positions for which Casey was suited. Casey made no showing that any of the jobs listed in the work survey were inappropriate. In explaining her failure to do a more exhaustive work search, Casey claimed that she sent her resumes out to

---

\* Brody, J. sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

\** Casey did not apply for work with her former employer. She testified that there was only one position with the Town of Portage Lake and that, in her absence, that position had been filled.

the firms that she "thought would be doing the most hiring." She also testified that she did "some" checking for jobs through the newspapers.

After review of all evidence the Commission found that Casey was restricted to working in the Portage/Ashland area and accepted Dr. Somerville's determination that she had regained only 30% of her work capacity. Finding that suitable work was "occasionally" available in her community, the Commission correspondingly reduced Casey's benefits by 30%. In a subsequent decision rendered pursuant to the parties' request for a clarification of the issue, the Commission also found that, pursuant to section 62–B, her compensation should be further reduced by 50% of the amount of the Social Security retirement benefits she was entitled to receive under 42 U.S.C. § 402. Casey appealed both decisions to the Appellate Division, which affirmed. We then granted Casey's petition for appellate review.

## II.

 Casey argues that the Commission erred in the granting of the employer's petition for review of incapacity. Casey specifically argues it was incumbent on the Town to prove that appropriate employment was "ordinarily" available, and the Commission's reduction of her benefits in spite of its finding that work was "occasionally" available evidenced a misunderstanding of the applicable law. We disagree. We held in *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1011 (Me.1980), that once an employer had produced evidence that the worker had regained some capacity to perform employment the worker had the

> burden of coming forward with evidence that he had made a reasonable exploration of the competitive labor market for work of the kind he had regained some capacity to perform and that he found either there was no stable market for such work or, if it was available, it was not available to him because of the still existing limitations on his regained capacity to work.

Accordingly, once it was shown that Casey had regained some work capacity, she had a burden of showing that she had made a "reasonable exploration" of the labor market and had found either "no stable market" or no stable market for a person with her limitations. Casey's search of seven businesses that she believed might be hiring did not compel a finding of "reasonable exploration" as set forth in *Ibbitson.*

In the instant case, the employer made a showing that there were several appropriate and available jobs for which Casey could have applied. Casey made no showing that her search was exhaustive or that any of her rejections or non-answers were due to the limitations caused by her injury. As we recently stated in *Dorey v. Forster Manufacturing Co.*, 591 A.2d 240, 242 (Me. 1991), the decision of the Commission in applying facts to the law will be given deference unless that decision has no rational foundation. The evidence submitted in this case indicates that the Commission had a firm factual foundation for its finding that employment was available to Casey. The Commission's use of the word "occasionally," as opposed to "ordinarily," should not obscure the fact that the Commission had a good deal of evidence before it that work was available to a person of Casey's qualifications.

## III.

 Casey also argues that the Commission erred in holding that section 62–B authorized her employer to offset 50% of her Social Security retirement benefits from her workers' compensation benefits. According to Casey, the plain language of the Social Security Act distinguishes "old age insurance benefits" and "widow's insurance benefits." Casey also argues that the legislative history of section 62–B establishes that it was not intended to apply to widow's benefits.

At the time of Casey's injury, section 62–B stated:

**1. Application** This section applies when weekly compensation is payable to an employee under section 54–A or 55–A for any period for which he is receiving

or has received old age insurance benefit payments under the United States Social Security Act, United States Code, Title 42, sections 301–1397f, or payments under an employee benefit plan.

**3. Coordination of Benefits.** Benefit payments subject to this section shall be reduced in accordance with the following provisions.

A. The employers obligation to pay weekly compensation under section 54–A or 55–A shall be reduced by:

(1) Fifty percent of the amount of old age insurance benefits received or being received under the United States Social Security Act; \*\*\*

We conclude that this statute applies to the benefits Casey is receiving pursuant to 42 U.S.C. § 402(e). Section 62–B specifically applies when a person is receiving "old age insurance benefits payments under the United States Social Security Act, *United States Code Title 42 sections 301 to 1397f*." Section 402 of the Social Security Act encompasses both what it terms "old age insurance benefits" and "widow's insurance benefits." Although section 62–B uses the term "old age insurance benefit payments," it encompasses widow's insurance benefits in section 402(e) as well as old age insurance benefits in section 402(a).

Moreover, a person eligible for both benefits may elect to receive the widow's insurance benefits only when that person's old age insurance benefits are less than the widow's benefits, 42 U.S.C.A. § 402(e)(1)(D). Thus, under Casey's interpretation, if her old age benefits were slightly greater than her widow's benefits, her workers' compensation necessarily would be reduced; but because her widow's benefits are greater, her workers' compensation cannot be reduced. Without a more definite statutory statement, we cannot conclude that the Legislature intended such an absurd result under section 62–B, which is intended to coordinate benefits.

\*\*\* This section was amended by P.L.1987, ch. 560, § 7, which substituted "sections 54–B or 55–B" for "sections 54–A or 55–A."

In the instant case, the Commissioner ordered a reduction by only 50% of the old age benefits to which Casey was entitled. That amount is less than 50% of the widow's benefits she is actually receiving. She cannot complain that the reduction is too low and the Town has not challenged the decision.

The entry is:

Decision of the Appellate Division of the Workers' Compensation Commission affirmed.

All concurring.