Gerald DUMOND

v.

AROOSTOOK VAN LINES, et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1996.
Decided Feb. 5, 1996.

Norman G. Trask (orally), Currier & Trask, P.A., Presque Isle, for Employee.

James S. Kriger (orally), Robinson, Kriger & McCallum, Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

WATHEN, Chief Justice.

Gerald Dumond appeals from a decision of the Workers' Compensation Board granting his employer's petition for review and Dumond's petition for permanent impairment benefits. Dumond raises two issues. He first contends that the Board's determination of decreased incapacity was not based on competent evidence. He also contends that it was error for the Board to award five weeks of benefits for his 1990 injury, one week of benefits for each of the five percentage points of permanent incapacity attributable to that injury. 39 M.R.S.A. § 56–B(1)(A) (1989). Dumond argues that the

Board should have added the five percent impairment to his previous twenty-three percent whole body impairment and awarded three weeks of benefits for each of the additional five percentage points of impairment attributable to his 1990 injury. Although we affirm the Board's decision on the petition for review, we agree with Dumond that it was error for the Board to ignore his pre-existing impairment in calculating permanent impairment benefits pursuant to section 56–B, and, accordingly, we vacate the decision.

Dumond suffered a work-related injury in 1990 while employed by Aroostook Van Lines [Aroostook], and has remained out of work since December of that year. Aroostook paid Dumond total incapacity benefits pursuant to a memorandum of payment, but filed a petition for review in 1992 seeking a reduction of those benefits. In 1993 Dumond filed a petition for permanent impairment benefits and the petitions were consolidated for hearing by the Board. The Board granted Aroostook's petition for review and reduced Dumond's benefits to reflect seventy-five percent partial incapacity. The Board also granted Dumond's petition for permanent impairment benefits, concluding that

> [t]he employee has ... received additional permanent impairment as a result of the 1990 injury [at Aroostook] in the amount of 5% whole person.... The employee argues that, under the law in effect in 1990, ... he should be entitled to three weeks of compensation for each percentage point. Since he had previously had 23% whole person impairment that the permanent impairment should be assessed between 23% and 28%. Finding nothing to indicate that that is correct, I find that the employee has received 5% whole person impairment, however, the statute does not indicate that it is to be assessed cumulatively.

Dumond filed a motion for findings of fact that was denied in March 1994. We granted Dumond's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994–95).

## I.

■ Dumond first contends that the hearing officer's assessment of seventy-five percent partial incapacity was not based on competent evidence. Dumond argues that, because of the severity of his injury, the lack of opportunities for sedentary employment in Aroostook County, his lack of a high school education and his work-history of heavy manual labor, the hearing officer should have awarded 100% partial incapacity benefits. P.L.1989, ch. 575, *codified as* 39 M.R.S.A. § 55–B.

■ The law in this area is well-settled.[1] Earning capacity is based on (1) the employee's physical capacity to earn wages and (2) the availability of work within the employee's physical limitations. *Warren v. Vinalhaven Light & Power Co.*, 424 A.2d 711, 714 (Me. 1981); *Fecteau v. Rich Vale Constr.*, 349 A.2d 162, 166 (Me.1975). On an employer's petition for review, the employer bears the burden of proof to establish the employee's earning capacity; however, when the employer shows that the employee has regained partial work-capacity, the employee bears a burden of production to show that work is unavailable as a result of the injury. *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980). If the employee meets the burden of production, the employer's "never shifting" burden of proof may require it to show that it is more probable than not that there is available work within the employee's physical ability. *Id.* at 1009–10; *Poitras v.*

---

1. Former section 55–B has been repealed and replaced by Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993) (codified as 39–A M.R.S.A. §§ 213, 214 (Supp.1994–95). The statement of legislative intent provides that "[s]o as not to alter benefits for injuries incurred before January 1, 1993, for matters in which the injury occurred prior to that date, all provisions of this Act apply, except that ... Title 39–A, sections 211, 212, 213, 214, 215, 221, 306, and 325 do not apply." P.L.1991, ch. 885, § A–10. Sections 213 and 214 are expressly listed as prospective in application and therefore do not apply retroactively to Dumond's date of injury.

*R.E. Glidden Body Shop,* 430 A.2d 1113, 1118 (Me.1981).[2]

■ Because the hearing officer was persuaded by competent evidence that Dumond had regained a partial work-capacity, Dumond bore the burden of producing evidence to demonstrate the unavailability of work. *Ibbitson,* 422 A.2d at 1009. Dumond testified that

> there are not too many that are going to hire me in the condition that I am in. That is what is discouraging about the whole thing. It takes a lot out of you when you realize that nobody is going to hire you because you got this problem.

We have held that an employee need not provide evidence of a work-search to satisfy the burden of production. As we held in *Warren,* 424 A.2d at 714–15, an employee may satisfy the burden of production with any competent evidence that work is unavailable due to an injury. Although the employee had not conducted a work-search in *Warren,* we held that his testimony concerning the limited availability of jobs on Vinalhaven Island could be regarded by the Commission as competent evidence to satisfy his burden of production. *Id.* at 715; *Poitras,* 430 A.2d at 1120. Unlike the employee's testimony in *Warren,* there is no specific evidence in this case addressed to the labor market in Dumond's locality or whether work was unavailable to him within his work-restrictions. The Board may have reasonably concluded that Dumond failed to meet his burden of production, and, accordingly, we affirm the Board's decision on the employer's petition for review.

---

*Marchand v. Eastern Welding Co.,* 641 A.2d 190, 191, n. 1 (Me.1994).

**2.** At the time of Dumond's 1990 injury, section 55–B had been amended to add the following language:

> For purposes of determining an injured employee's degree of incapacity under this section, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work *considering* the effects of the employee's work-related injury. If no such work is available in and around the employee's community or if the employee is unable to obtain such

## II.

■ Dumond next contends that the Board miscalculated his permanent impairment benefit award. At the time of his injury, 39 M.R.S.A. § 56–B provided, in pertinent part:

**1. Weekly benefit.** In the case of permanent impairment, the employer shall pay the injured employee a weekly benefit equal to ⅔ of the state average weekly wage ... for the number of weeks shown in the following schedule:

**A.** One week for each percent of permanent impairment to the body as a whole from 0 to 14%;

**B.** Three weeks for each percent of permanent impairment to the body as a whole from 15% to 50%;

**C.** Four and ½ weeks for each percent of permanent impairment to the body as a whole from 51% to 85%; and

**D.** Eight weeks for each percent of permanent impairment to the body as a whole greater than 85%.

Compensation under this section is in addition to any compensation under 54–B or 55–B received by the employee....

39 M.R.S.A. 56–B (1989). Dumond argues that pursuant to the statute's plain language, the Board should have added his five percent impairment related to the 1990 injury to his previous twenty-three percent whole body impairment, and awarded three weeks of benefits for each of the five percentage points of impairment. We conclude that section 56–B is ambiguous on this point. Section 56–B(1) provides three weeks of permanent impairment benefits for each percent of

work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%.

P.L.1989, ch. 575. The statement of fact makes clear that this amendment was not intended to make a "substantive change in current law, but only [to] clarif[y] the intent of current law" that employees are not required to perform a statewide work-search for purposes of the partial incapacity statute. L.D. 924, *Statement of Fact* (114th Legis.1989). The statement of fact provides that the "Commission [should] continue to evaluate an injured employee's incapacity under the test stated by the Law Court in *Ibbitson....*" *Id.*

whole body "impairment" between fifteen and fifty percent. There is nothing in the statutory language to suggest that the word "impairment" was intended to include or exclude impairment from prior work or non-work-injuries.

■ When the plain language of a statute is ambiguous, we turn to other indicia of legislative intent, such as its legislative history. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). As we have stated, "[s]ince 1965 the award for permanent impairment has no relation to work incapacity or wage replacement. Rather, it is based on the loss of function of a part of the body due to work-related injury." *Delorge v. NKL Tanning, Inc.*, 578 A.2d 1173, 1174 (Me. 1990); *Bean v. H.E. Sargent Inc.*, 541 A.2d 944, 946 (Me.1988); *Campbell v. Bates Fabrics, Inc.*, 422 A.2d 1014, 1015 (Me.1980).[3] Prior to the enactment of section 56–B, permanent impairment benefits were awarded on a lump-sum basis according to a detailed schedule of benefits for the loss of specific scheduled body parts. 39 M.R.S.A. §§ 56, 56–A (Pamph.1985), *repealed and replaced by* P.L.1987, ch. 559, § B, 33. In 1987, as part of an emergency effort to reduce workers' compensation benefits, the Legislature replaced the former "body part" schedule with a "whole body" approach to calculating permanent impairment benefits. P.L.1987, ch. 559, § B, 33; L.D.1929, Statement of Fact (113th Legis.1987). The statement of fact attached to the legislation stated that the purpose of section 56–B was to

> replace the current laws governing permanent impairment benefits. *The method of calculating the degree of permanent impairment is changed to reflect the actual physical disability to the body as a whole ... The amount of compensation to be paid is calculated by using a graduated table that provides greater compensation to those employees with more serious impairments....*

L.D.1929, Statement of Fact (113th Legis.1987) (emphasis added).

■ Consistent with the Legislature's primary goal of reducing benefits, the whole body approach is intended to prevent the "stacking" of permanent impairment benefit awards for individual body parts. By providing substantial increases in benefits when whole body impairments exceed fifteen, fifty and eighty-five percent, the amendment implicitly recognizes a qualitative difference between lesser and greater degrees of whole body impairment. *See* 1C A. Larson, *The Law of Workmen's Compensation* § 58.24 (1994) (actual impairment may be greater than the sum of the parts). It is inherent in the whole body approach, therefore, that the Board consider the cumulative effects of multiple impairments to the body as a whole. To restrict the analysis of whole body impairment to that caused by individual injuries standing alone, as the Board has done here, defeats the legislative purpose of providing larger awards to employees with greater whole body impairments. Consequently, we hold that the Board must consider the permanent impairment attributable to previous injuries when determining whether the impairment falls within the more serious, higher percentage of whole body impairments pursuant to former section 39 M.R.S.A. § 56–B.

In *Delorge*, 578 A.2d at 1173–74, we held that permanent impairment benefits may be reduced by the identifiable and measurable degree of nonwork-related impairment that predated the injury. Relying on *Delorge*, Aroostook contends that permanent impairment benefits are not cumulative and therefore it is not appropriate to consider an employee's pre-existing permanent impairment in calculating an award. *Id.* *Delorge*, however, does not construe section 56–B, but former sections 56 and 56–A, that provided a schedule of benefits for impairment to individual body parts. *Id.* As discussed above,

**3.** Until 1991, permanent impairment and incapacity benefits could be received concurrently. 39 M.R.S.A. § 56–B (1989), *repealed and replaced by* P.L.1991, ch. 615, § D–8; *Campbell*, 422 A.2d at 1015, n. 5. In 1991, in an effort to scale back permanent impairment recoveries, the Legislature amended section 56–B to allow incapacity benefits to be offset against benefits for permanent impairment. P.L.1991, ch. 615, § D–8. This amendment expressly applies only to injuries occurring on or after 1991, and therefore, does not apply retroactively to Dumond's date of injury. P.L.1991, ch. 615, § D–26.

section 56–B represents an entirely different approach to permanent impairment that is designed to compensate employees for impairment to the body as a whole. It is entirely consistent with the legislative purpose to "provide[ ] greater compensation to those employees with more serious impairments,' that the Board consider the cumulative effect that separate impairments, including pre-existing impairment, have to the body as a whole when awarding benefits pursuant to former section 39 M.R.S.A. § 56–B. Accordingly, we vacate the decision of the Board with regard to the award of permanent impairment benefits.

The entry is:

Decision of the Workers' Compensation Commission vacated. Remanded to the Board for further proceedings consistent with the opinion herein.

All concurring.