Chester R. TRIPP, Jr.

v.

PHILIPS ELMET CORP.

and

Travelers Insurance Co.

Supreme Judicial Court of Maine.

Argued April 3, 1996.

Decided May 17, 1996.

Justin Leary (orally), Laskoff & Sharon, Lewiston, for Employee.

James E. Fortin (orally), Douglas, Whiting, Denham & Rogers, Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

Philips Elmet Corp. appeals from a decision of the Workers' Compensation Board granting employee Chester Tripp's petition for review and concluding that because the employer failed to provide a list of suitable employers pursuant to former section 55–B(1)(B), Tripp is entitled to 100% partial incapacity benefits. 39 M.R.S.A. § 55–B(1)(B) (effective for injuries occurring on or after October 17, 1991, and before January 1, 1993).[1] Because the Board misconstrued the parties' respective burdens in cases when a partially incapacitated employee seeks 100% incapacity benefits, we vacate the decision of the Board.

Tripp suffered a carpal tunnel injury on November 18, 1991, while employed by Philips Elmet. In a prior decision, Tripp was awarded short-term total and ongoing 25% benefits, based in part on his failure to conduct a good faith work search. Tripp filed a petition for review in January 1994, contending that his incapacity had increased. The Board found that, although his physical incapacity continues at 25%, Tripp was entitled to 100% incapacity benefits because Philips Elmet failed to provide a list of suitable employers and therefore had not met its burden of production after the first forty weeks following the injury. We granted Philips Elmet's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp. 1995).

Philips Elmet contends that it was error for the Board to conclude that section 55–B, as amended in 1991, relieves the employee of the burden of seeking work in the employee's community after 40 weeks from the date of the injury. Although many of our decisions discuss the respective burdens of the parties in cases involving injuries that predate October 17, 1991, we have not addressed the parties' burdens pursuant to section 55–B as amended in 1991.

█ Our early decisions hold that a partially incapacitated employee may receive compensation for total incapacity based on a combination of the work injury and a loss of employment opportunity attributable to that injury. *Pelchat v. Portland Box Co.*, 155 Me. 226, 229–30, 153 A.2d 615, 617–18 (1959);

---

1. 39 M.R.S.A. § 55–B has been repealed and replaced by 39–A M.R.S.A. § 213. Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). The Legislature provided that "for matters in which the injury occurred prior to [January 1, 1993], all the provisions of [Title 39–A] apply, except that ... sections 211, 212, 213, 214, 215, 221, 306, and 325 do not apply." P.L.1991, ch. 885, § A–10 (effective January 1, 1993). Because section 213 is listed in section A–10, it does not apply to pre–1993 injuries. *Dumond v. Aroostook Van Lines*, 670 A.2d 939, 941 n. 1 (Me.1996).

Connelly's Case, 122 Me. 289, 292–93, 119 A. 664, 666 (1923); Ray's Case, 122 Me. 108, 110–11, 119 A. 191, 191–92 (1922). At the time of Ray's Case, the Act provided that "[w]hile the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to three-fifths the difference between his weekly wages, earnings or salary, before the injury and the weekly wages, earnings or salary which he is able to earn thereafter . . . ." P.L.1919, ch. 238 (emphasis added). This statutory language has remained essentially unchanged to the present day. See, e.g., 39–A M.R.S.A. § 213 (Supp. 1995); 39 M.R.S.A. § 55–B (Supp.1992). In Ray's Case, we held that the term "incapacity for work" means not merely physical incapacity, but also the lack of employment resulting from the injury. Ray's Case, id. at 111, 119 A. at 192; Levesque v. Shorey, 286 A.2d 606, 609 (Me.1972). More importantly, partial benefits are calculated by reference to what the employee is "able to earn" following an injury. 39–A M.R.S.A. § 213; 39 M.R.S.A. § 55–B; P.L.1919, ch. 238 (emphasis added). It is implicit in the phrase "able to earn" that the determination of partial incapacity requires more than an examination of the employee's actual physical limitations or actual post-injury earnings. Ray's Case, 122 Me. at 111, 119 A. at 192. The inquiry is the degree to which the "persisting effects of [a] work-related injury are preventing [the employee] from engaging in remunerative work." Ibbitson v. Sheridan Corp., 422 A.2d 1005, 1008 (Me.1980).

 The so-called work-search rule was a judicially created doctrine designed to allocate the burdens of production and of proof in cases when a partially incapacitated employee claims total incapacity benefits. The purpose of the rule is to aid in the calculation of a partially incapacitated employee's "ability to earn." We have stated the rule as follows:

> On an employer's petition for review, the employer bears the burden of proof to establish the employee's earning capacity; however, when the employer shows that the employee has regained partial work-capacity, the employee bears a burden of

production to show that work is unavailable as a result of the injury. Ibbitson v. Sheridan Corp., 422 A.2d 1005, 1009 (Me. 1980). If the employee meets the burden of production, the employer's "never shifting" burden of proof may require it to show that it is more probable than not that there is available work within the employee's physical ability. Id. at 1009–10; Poitras v. R.E. Glidden Body Shop, 430 A.2d 1113, 1118 (Me.1981).

Dumond v. Aroostook Van Lines, 670 A.2d 939, 941–42 (Me.1996). The only difference in cases involving an employee's petition for award or review is that the partially incapacitated employee seeking 100% benefits must bear the ultimate burden of proof to show that work is unavailable as a result of the injury. See Harrington v. Goodwin's Chevrolet, Inc., 400 A.2d 358, 361 (Me.1979) (petition for award); Theriault v. Walsh Constr. Co., 389 A.2d 317, 320 (Me.1978) (petition for further compensation).

The work-search rule is not a particularly appropriate name for the doctrine. There was no general duty of employees to search for work under the former Act. The failure to perform a work-search was not a basis for completely depriving an employee of benefits; the work-search rule merely allocated the burdens of proof and production in cases in which a partially incapacitated employee seeks to obtain or to retain benefits for 100% incapacity. Moreover, the employee was not required to provide specific evidence of a work-search but could rely on any competent evidence that tended to show the unavailability of work, such as labor market evidence. Dumond, 670 A.2d at 941–42; Poitras v. R.E. Glidden Body Shop, 430 A.2d 1113, 1118 (Me.1981); Warren v. Vinalhaven Light & Power Co., 424 A.2d 711, 714–15 (Me.1981).

The work-search rule was expressly codified in 1989 when former section 55–B was amended to add the following language:

> For purposes of determining an injured employee's degree of incapacity under this section, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects

of the employee's work-related injury. If no such work is available in and around the employee's community or if the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%.

P.L.1989, ch. 575. The purpose of that amendment was not to alter the prior judge-made doctrine, but to clarify that the employee's ability to earn must be determined with reference to the availability of employment in the local community and not the state-wide labor market. L.D. 924, Statement of Fact (114th Legis.1989); *Dumond*, 670 A.2d at 942 n. 2.

In 1991 the above-quoted paragraph was repealed and replaced by the enactment of L.D.1981 (115th Legis.1991) that contained the language at issue in this appeal:

> **1. Evaluation standards.** This subsection governs the determination of an injured employee's degree of incapacity under this section.
>
> > **A.** During the first 40 weeks from the date of the injury, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects of the employee's work-related injury. If no such work is available in and around the employee's community or if the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%. The employee has the burden of production and proof on the availability of work.
> >
> > **B.** After the first 40 weeks from the date of injury the employer has the burden of production regarding the employee's capacity to perform work and the burden of producing a list of suitable and available job positions within the State. The employee has the burden of production regarding a good-faith exploration of the positions on the list. The employee bears the ultimate burden of

proof to show that the employee was not hired for one of the positions. The employer shall pay all reasonable expenses incurred by the employee in conducting the exploration of the positions on the list provided by the employer.

P.L.1991, ch. 615, § D–7, *codified as* 39 M.R.S.A. § 55–B(1)(B) (effective for injuries occurring on or after October 17, 1991, and before January 1, 1993).

The hearing officer concluded that because the employer bears the burden to produce "a list of suitable and available job positions within the State," and because "the State" must necessarily include the local community (at least in cases involving Maine residents), section 55–B(1)(B) relieves the employee of the burden to show the unavailability of work in the local community after forty weeks following the injury. The burden then shifts to the employer not merely to show the availability of employment in the local community or the state, but also to provide a list of positions and to reimburse the employee for reasonable expenses incurred in exploring those positions. Philips Elmet contends that the correct interpretation of section 55–B(1)(B) would require that the employee's burden of production to show the unavailability of work within the local community continues after the first forty weeks following the injury, but would permit the employer to expand the geographical scope of the labor market after forty weeks to include the entire state if the employer produces a list of suitable and available job positions outside the employee's community. We agree with the employer's interpretation.

■■■ Section 55–B does not specify the consequences of the employer's failure to produce a list of available jobs in the state after the first forty weeks following an injury, nor does section 55–B(1)(B) amend or alter the requirement that employees must be compensated based on what they are "able to earn" following an injury. As we have stated, when statutory language has acquired a consistent and entrenched meaning through prior judicial decisions, we will not abandon our traditional interpretation of that language unless there is express statutory language plainly showing a legislative in-

tent to abrogate those prior decisions. *See Caron v. Maine School Admin. Dist. No. 27,* 594 A.2d 560, 563 (Me.1991) (absent clear and explicit statutory language showing legislative intent to modify case law, we will not interpret a statute to effect such a modification). In light of our consistent interpretation of the phrases "incapacity for work" and "ability to earn," we do not interpret subsection (1)(B) as relieving the employee of either the burden of production or of proof to show the unavailability of work within the employee's community absent any express language compelling such a result. In addition, the requirements of section 55–B(1)(B) apply after the first 40 weeks from the *date of injury.* The Board's interpretation would eliminate all work search requirements for an injured worker who does not regain partial work capacity until after forty weeks from the date of injury.

Moreover, legislative history supports our interpretation. The legislative record suggests that the 115th Legislature was very much concerned with the issue whether the employee's burden of production should encompass the state-wide or community-wide labor market. Other legislation would have retained the community-wide labor market requirement, L.D.1957, § 49 (115th Legis.1991); however, a committee amendment to L.D.1957 would have required an examination of the state-wide labor market after 52 weeks following the injury. Comm.Amend. A to L.D.1957, No. H–689 (115th Legis.1991).[2] The House proposal reflected a compromise between those legislators supporting the community-wide work-search and those supporting an immediate state-wide search. As one legislator remarked:

> We all know that there are instances where people are out of work for long periods of time, not because they got hurt on the job, but because there is no work in their area. What do they do? Do they stay home forever or do they, after a certain period of time, go out and start looking further and further away until they can find a job? It seems only sensible to me that most of us won't sit in our house without a job, regardless of injury, for

more than a year. So we decided among ourselves that it would be fair to say that somebody is injured, after one year they look within their community for work and if they can't find a job, only then would they go to a statewide job search.

Legis.Rec. H–1262 (1st Reg.Sess.1991). *See also* H–1267, H–1272 (1991) (concerning L.D. 1957). The purpose of expanding the employee's burden of production to include the state-wide labor market was to reduce workers' compensation benefits and encourage employees to return to work. Legis.Rec. H–1529 (1st Spec.Sess.1991). *See also* H–1262, H–1267, H–1272 (1st Reg.Sess.1991) (concerning L.D.1957). Despite the frequent and repeated discussion of this issue, there is no suggestion in the legislative record that the 115th Legislature in enacting L.D.1981 ever intended to relieve the employee of the burden to show the unavailability of work within the employee's community after forty weeks following the injury.

As amended in 1991, section 55–B(1)(B) provides a limited state-wide work search requirement that is triggered after the first forty weeks following the injury. The employer is permitted to expand the employee's duty to explore the labor market beyond the local community, but the employer must locate the available jobs outside the employee's community and pay the employee's reasonable expenses incurred in an exploration of those positions. We conclude that section 55–B does not relieve the employee of the burden of proof or of production to show the unavailability of work within the employee's community after forty weeks following the injury. Accordingly, we vacate the decision of the Board.

The entry is:

Decision of the Workers' Compensation Board vacated. Remanded to the Board for further proceedings consistent with the opinion herein.

All concurring.

---

2. The 115th Legislature considered the issue in at least three proposed statutory amendments, L.D.1957, L.D.1981 (eventually enacted), and L.D. 2423 (115th Legis.1991).