1999 ME 105

Floyd ADAMS Jr.

v.

MT. BLUE HEALTH CENTER

and

Commercial Union Insurance Company.

Supreme Judicial Court of Maine.

Argued: May 4, 1999.
Decided: July 7, 1999.

Jeffrey L. Cohen (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, P.A., Topsham, for the appellant.

Stephen W. Moriarty (orally), Norman, Hanson & DeTroy, Portland, for the appellees.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The employee, Floyd Adams Jr., appeals from a decision of the Workers' Compensation Board denying his petition for an inflation adjustment. Pursuant to the law at the time of his 1990 injury, employees were entitled to an inflation adjustment for total, but not partial, incapacity benefits. 39 M.R.S.A. §§ 54–B, 55–B (1989), *repealed by the Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7. The issue is whether Adams is receiving voluntary payments of benefits

for total or 100% partial incapacity. The Board concluded that, notwithstanding the unavailability of work within his local community and his inability to perform full-time work in the statewide labor market, Adams has a part-time work capacity and is therefore entitled to partial, and not total, incapacity benefits. We conclude that the Board did not apply the correct legal standard for the employee's 1990 date of injury, and, accordingly, vacate.

## I. FACTS

[¶ 2] Adams suffered a work-related back injury on November 8, 1990, while employed by Mt. Blue Health Center. Except for a brief, unsuccessful return to light-duty employment in 1991, Adams has received the equivalent of total incapacity benefits since the date of his injury. Adams filed a petition for award of an inflation adjustment in October 1996, contending that he has received total incapacity benefits pursuant to former section 54–B and is, therefore, entitled to an inflation adjustment. The Board denied the petition and we granted the employee's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

## II. ANALYSIS

[¶ 3] At the time of Adams' 1990 injury, former section 54–B provided, in pertinent part:

> While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, . . . .
>
> **1. Annual adjustment.** Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually. . . .
>
> **2. Limitation.** Any employee who has reached maximum medical improvement and is able to perform *full-time* remunerative work in the ordinary competitive labor market in the State, re-

gardless of the availability of such work in and around his community, is not eligible for compensation under this section, but may be eligible for compensation under section 55–B. . . .

. . . .

39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7 (emphasis added).

[¶ 4] The term "total incapacity" has never been defined in the Act. Our opinions prior to 1987 use the term "total incapacity" to mean (1) a total physical incapacity to perform any work, either part-time or full-time, or (2) the combination of a partial physical incapacity attributable to that injury and the absence of any employment opportunity in the employee's local community. *See Curtis v. Bridge Constr. Corp.*, 428 A.2d 62, 64 (Me. 1981); *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1008–11 (Me.1980); *Pelchat v. Portland Box Co.*, 155 Me. 226, 229–30, 153 A.2d 615, 617–18 (1959); *Connelly's Case*, 122 Me. 289, 292–93, 119 A. 664, 666 (Me. 1923); *Ray's Case*, 122 Me. 108, 110–11, 119 A. 191, 191–92 (1922).

[¶ 5] The method of establishing entitlement to total or 100% incapacity benefits in cases involving employees with a partial physical incapacity is commonly known as the "work-search" doctrine. *See Tripp v. Philips Elmet Corp.*, 676 A.2d 927, 928–29 (Me.1996). As we have stated, the "work-search" rule is not a particularly apt name for the doctrine because the failure to perform a work-search has never constituted ground for completely denying benefits; the doctrine is only intended to determine an employee's entitlement to total or 100% benefits. *Id.* Moreover, the employee is not required to provide evidence of a "work-search" per se, to establish the unavailability of work in the local community. *Id.* We have held that any competent evidence, e.g., labor market surveys, may be used to establish the unavailability of work. *Id.; see, e.g., Poitras v. R.E. Glidden Body Shop.* 430 A.2d 1113, 1120 (Me.1981); *Warren v. Vinalhaven*

*Light & Power Co.,* 424 A.2d 711, 714–15 (Me.1981).

[¶ 6] Prior to 1987, it had not been necessary to distinguish between total and 100% partial incapacity, because, as a practical matter, there was no real difference between these benefits. After 1987, with the enactment of the durational limit to partial incapacity benefits (i.e., 400 weeks) and the repeal of the inflation adjustment for partial benefits, it became necessary to determine whether an employee's maximum incapacity benefits fell within the total incapacity statute, section 54–B, or the partial incapacity statute, section 55–B. *See* P.L.1987, ch. 559, Pt. B, § 30, *repealed by* P.L.1991, ch. 885, § A–7.[1]

[¶ 7] In this case, the Board has interpreted section 54–B to apply only to cases of total *physical* incapacity. Pursuant to the Board's interpretation, when a partially incapacitated employee establishes the unavailability of any employment in the local community due to the injury, the employee is entitled to 100% partial incapacity pursuant to the partial incapacity statute, 39 M.R.S.A. § 55–B, *repealed by* P.L.1991, ch. 885, § A–7. Because Adams demonstrated a physical work capacity to perform part-time work, the Board concluded that he was not entitled to total incapacity benefits pursuant to section 54–B, but because he had established the unavailability of any work within his local community, he was entitled to 100% partial incapacity benefits pursuant to section 55–B.

[¶ 8] Relying on the limitation in subsection 54–B(2), however, Adams contends that partially incapacitated employees, even those actually earning part-time post-injury wages, may be entitled to total incapacity benefits whenever they are unable to perform *full-time* remunerative work in the statewide labor market. The Board rejected this interpretation, stating: "By this logic, an employee who is [ . . . performing] a significant amount of part-time [work] would be entitled to total workers' compensation benefits pursuant to former § 54–B." We agree with the Board that the actual receipt of post-injury wages precludes an award of total incapacity benefits. *See Dunkin Donuts of America, Inc. v. Watson,* 366 A.2d 1121, 1126 (Me.1976) (no entitlement to total benefits during period of part-time employment). The word "Limitation" in the heading suggests that subsection 2 was not intended to provide an overall definition of total incapacity, but to limit an employee's entitlement to total incapacity benefits after the initial determination of total incapacity has been made.

[¶ 9] Although the Board rejected the employee's interpretation, the Board did not supply an independent meaning to the limitation provision of subsection 54–B(2). It is axiomatic that no phrase in a statute should be interpreted as surplusage when a reasonable interpretation supplying meaning to that phrase is possible. *See Labbe v. Nissen Corp.,* 404 A.2d 564, 567 (Me.1979). We conclude that the statutory language is sufficiently ambiguous to justify recourse to the legislative history to arrive at the legislative intent. *See Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994).

## II. LEGISLATIVE HISTORY

### A. The 1987 Amendments

[¶ 10] Subsection 54–B(2) was enacted in 1987. *See* P.L.1987, ch. 559, Pt. B, § 27.

---

1. Section 55–B, as amended in 1987, provided in pertinent part:

   While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earning[s] or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury, . . . . Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.

   . . . .

   39 M.R.S.A. § 55–B (1989), *repealed by* P.L. 1991, ch. 885, § A–7.

As we have stated, the 1987 amendments were part of an emergency effort to reduce workers' compensation costs in response to a threatened exodus of insurers. *See McDonald v. Rumford School Dist.,* 609 A.2d 1160, 1161 (Me.1992). In order to reduce the cost of partial incapacity benefits, the most costly benefit in the workers' compensation system at that time, former section 55–B was amended to remove annual inflation adjustments of partial benefits and to require a durational limit of 400 weeks to the receipt of partial benefits. *See* P.L.1987, ch. 559, Pt. B, § 30.

[¶ 11] The Legislature in 1987 also considered whether to hold employees to a statewide labor market search. *See* 3 Legis. Rec. 26 (2nd Spec.Sess.1987) (Statement of Rep. Ruhlin). Our decisions prior to 1987 make clear that, pursuant to the work-search rule, partially-incapacitated employees seeking total benefits were only required to show a lack of available employment in the employee's local community. *See Ibbitson,* 422 A.2d at 1011. After considering several proposed amendments,[2] the Legislature adopted L.D.1929 containing the subsection 54–B(2) "limitation" language at issue in this appeal. P.L.1987, ch. 559, Pt. B, § 17; L.D.1929 (113th Legis.1987).

[¶ 12] The purpose of the limitation in subsection 54–B(2) was to limit total incapacity benefits to a subset of those employees formerly treated as totally incapacitated pursuant to the "work-search" rule. As the Statement of Fact attached to the L.D. states:

The definition of a totally incapacitated worker has been restricted so that injured employees who are unable to perform any full-time remunerative work in the State's ordinary labor market will be classed as totally incapacitated; this standard was adapted from the first

phase of the incapacity test outlined by the Law Court in *Ibbitson* [, 422 A.2d 1005].

L.D.1929, Statement of Fact (113th Legis.1987). Reference in the Statement of Fact to our decision in *Ibbitson,* 422 A.2d 1005, in which we outlined the work-search rule in a case involving an employee with a partial physical incapacity, reflects a legislative intent that the term "total incapacity" include the "work-search" rule cases when a partially incapacitated person is unemployed due to the unavailability of employment resulting from a work injury.

[¶ 13] The rationale for subsection 54–B(2) is grounded in the recognition that, after the exhaustion of the maximum 400 weeks of partial benefits, a partially incapacitated employee will often be required by economic circumstances, i.e., the loss of benefits, to travel outside the local community to obtain employment. Statements by the legislators suggest that, while it might be unfair for an employee to be required to travel outside his or her local community for the prospect of a part-time job, it is less unfair if there is a prospect of full-time employment within that employee's physical capabilities somewhere in the state. As one Senator remarked:

If a person is classified as permanent partial you are not saying you have to move to another part of the state or lose your benefits, you are saying that for the next four hundred weeks you will receive your disability benefits and during that time, we [have] provided for you an opportunity to be re-trained and get back into the workplace.... What we have actually done is made it very clear that if you can work in a full-time job, you are partially disabled, or permanent partial, you will have four hundred weeks, we will give you training and you will be sent back to work. If you can't go to a full-time job, you are total[ly]

**2.** The first proposed bill in 1987 came from the Governor's office: An Act to Reform the Maine Workers' Compensation Act to Assure Coverage for Maine Workers, L.D.1918, (113th Legis.1981). Most of the legislative

debate discussing subsection 54–B(2) was not in connection with L.D.1929, but a former bill, L.D.1928, containing identical language. L.D.1928 (113th Legis.1987).

incapacit[ated] and that is not unfair at all.

3 Legis. Rec. 49 (2nd Spec.Sess.1987) (Statement of Sen. Dutremble). *See also* 3 Legis. Rec. 26 (2nd Spec.Sess.1987) (Statements of Rep. Ruhlin and Rep. Willey).

[¶ 14] Section 54–B(2), however, is not a codification of the work-search rule. Unlike the work-search rule, which hinges on the *availability* of work, the crucial issue for purposes of subsection 54–B(2) is whether the employee is physically "able to perform" work in the ordinary competitive statewide labor market. This is a physical test and does not relate to the availability of the work to the employee. Accordingly, partially incapacitated employees could only receive total benefits pursuant to section 54–B if they could establish (1) the unavailability of work in their local communities, i.e., the former "work-search" rule, and (2) the inability to perform full-time work in the ordinary competitive statewide labor market. As Senator Andrews remarked:

The new definition that we have before us asks is that [injured worker] capable of full-time work, any full-time work in the State of Maine. Anywhere in the State of Maine regardless if the job is available or not. You could be way up in the Maine woods hurt, severely hurt and find that there is a job that you might be able to do on the other end of the State and even if that job isn't available to you, even if there is no way you would be able to take that job because there are too many people waiting in line to fill that job or the job is in a location that is totally inaccessible to you, all there has to be is a job out there that you could do whether it is available or not. If that is the case, you are not considered totally disabled under this legislation. . . .

3 Legis. Rec. 46 (2nd Spec.Sess.1987) (Statement of Sen. Andrews).

B. The 1989 Amendments

[¶ 15] The partial incapacity statute, section 55–B, was amended in 1989 to add the following provision:

For purposes of determining an injured employee's degree of incapacity under this section, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects of the employee's work-related injury. If no such work is available in and around the employee's community or if the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%.

39 M.R.S.A. § 55–B (Supp.1989), *amended by* P.L.1991, ch. 615, § D–7, *repealed by* P.L.1991, ch. 885, § A–7. As we have previously stated, the purpose of the second sentence of the 1989 amendment was to clarify that the requirement for establishing 100% partial incapacity is a community-wide standard, not a statewide standard. *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941–42, n. 2 (Me.1996); L.D. 924, Statement of Fact (114th Legis.1989).

[¶ 16] The Statement of Fact suggests that the 1989 amendment was not intended to alter the rule for determining entitlement to total incapacity pursuant to section 54–B. The second sentence of the amendment was only intended to clarify the work-search rule in the limited number of cases that do not fall under section 54–B, i.e., those partially incapacitated employees who cannot find part-time work in the local community, but who are able to perform full-time work within the statewide labor market. The Statement of Fact attached to the 1989 amendment provides, in pertinent part:

This amendment does not alter in any way the current 'statewide labor market' standard used to classify an injured employee as totally or partially incapacitat-

ed, but merely clarifies that this restriction upon an injured employee's ability to claim benefits under the total incapacity section of the Workers' Compensation Act was never intended to require an employee to undertake a statewide work search for purposes of establishing the employee's degree of incapacity under the partial incapacity provision of the Workers' Compensation Act. The Maine Revised Statutes, Title 39, section 54–B, subsection 2, simply requires that, to be classed as totally incapacitated, an injured employee must demonstrate an inability to perform any full-time remunerative work available in an ordinary competitive labor market in the State. An employee who fails to demonstrate this fact may still receive benefits for partial incapacity under Title 39, section 55–B.

In determining the degree of incapacity for the purposes of calculating benefits due to an injured employee under Title 39, section 55–B, it was intended that the Workers' Compensation Commission continue to evaluate an injured employee's incapacity under the test stated by the Law Court in *Ibbitson* [, 422 A.2d 1005]. This amendment clarifies that the *Ibbitson* test still applies in the case of partial incapacity and that the degree of incapacity is determined on a local, not statewide, standard. An injured employee who is capable of performing work found in the ordinary statewide labor market but who demonstrates by an unsuccessful work search that the employee is unable to obtain

work in or around the employee's community still qualifies as 100% incapacitated, even though the employee will receive benefits under the partial incapacity section of the Workers' Compensation Act and remain subject to the 400–week duration limit of that section.
L.D. 924, Statement of Fact (114th Legis.1989).

C. Summary of Legislative History

[¶ 17] In 1987 and 1989, the Legislature understood total incapacity to include, in some situations, employees with partial physical incapacity. Pursuant to section 54–B as amended in 1987, an employee could establish entitlement to total benefits by showing either (1) a total physical incapacity to perform any work, part-time or full-time, regardless of actual availability, or, (2) if the physical incapacity is partial, by establishing the unavailability due to the injury of part-time or full-time work in the employee's local community and that the employee is also physically unable to perform full-time work in the statewide labor market, regardless of the availability of that work. The statutory amendment to section 55–B in 1989 was not intended to alter the law in 1987, but to clarify the work-search requirement for those employees who physically were able to perform some work in the local community and full-time work in the statewide labor market.[3]

### III. APPLICATION OF LAW TO FACTS

■ [¶ 18] In this case, we must apply the law at the time of Adams' injury in

---

3. It appears that the Legislature itself, in 1991, interpreted section 54–B in the same manner used by the Hearing Officer in this case. As a consequence of that interpretation, when the work-search rule was modified in 1991, the amendments were confined to the partial incapacity statute, section 55–B. P.L.1991, ch. 615, Pt. D, § D–7, *codified as* 39 M.R.S.A. § 55–B (Supp.1991) (effective for injuries occurring after October 17, 1991 and before January 1, 1993). Had the Legislature interpreted section 54–B, in 1991, to include a work-search requirement, as it had in 1987 and 1989, it is plausible that the Legislature

would also have expressly modified the work-search rule in section 54–B, as it did with section 55–B. These later amendments could lead to the conclusion that the Legislature now interprets total incapacity to mean total *physical* incapacity. However, notwithstanding the possibility that the Legislature's own understanding of total incapacity has "evolved" between the years of 1987 and 1991, in the absence of changes in section 54–B reflecting that evolution, we must interpret the language at issue in section 54–B according to the legislative intent at the time of its enactment.

1990. *See* P.L.1991, ch. 885, § A–10. In order to prove entitlement to total incapacity benefits for a 1990 injury, the employee must show: (1) a total or partial physical incapacity; (2) resulting in;[4] (3) the inability to obtain any work, part-time or full-time, in the employee's local community; and (4) the inability to perform full-time work in the ordinary competitive labor market in the state, regardless of the availability of that work.

[¶ 19] In this case, the Board concluded that Adams has a partial physical incapacity and that work is unavailable to him in his local community as a result of his work-related injury.[5] These findings satisfy the first three requirements for establishing total incapacity. The Board further found, at least implicitly, that Adams lacked the ability to perform full-time work in the state labor market. We conclude that Adams has met the four requirements. We must conclude, therefore, that Adams is entitled to total incapacity benefits pursuant to former section 54–B.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

---

**4.** *See Coty v. Town of Millinocket,* 393 A.2d 156, 157 (Me.1978) (no compensation when employee's unsuccessful work search after economic layoff from post-injury job resulted from a general economic downturn, and not the injury).

**5.** Although the Hearing Officer did not make an explicit finding of unavailability, that finding must be inferred from the Hearing Officer's determination that Adams was entitled to benefits pursuant to subsection 55–B for 100% partial incapacity.