2000 ME 121

**Robert LAMPHIER**

v.

**BATH IRON WORKS CORP.**

Supreme Judicial Court of Maine.

Argued May 3, 2000.
Decided June 27, 2000.

Benjamin I. Grant, Esq., (orally), Kaplan & Grant, Portland, for employee.

John H. King Jr., Esq., (orally), Norman, Hanson & DeTroy, LLC, Portland, for employer.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The employee, Robert Lamphier, appeals from a decision of the Workers' Compensation Board granting his employer's petition for review of incapacity and awarding 100% partial incapacity benefits. *See* 39 M.R.S.A. § 55–B (Supp.1991) (effective for injuries occurring after October 17, 1991 and before January 1, 1993), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8. Relying on *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 17, 735 A.2d 478, 483, Lamphier contends that he is entitled to benefits for total incapacity, because he established that there was no available work in his local community and that he is physically incapable of performing full-time work in the statewide labor market. *See* 39 M.R.S.A. § 54–B (Supp. 1991) (effective for injuries occurring after October 17, 1991 and before January 1, 1993), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8. The distinction between 100% partial incapacity and total incapacity is a matter of some importance because benefits for the former are subject to a durational limit while benefits for the latter are not.[1] We agree with Lamphier's contention and we vacate the decision of the Board.

[¶ 2] The facts may be briefly summarized as follows: Robert Lamphier suffered a work-related back and left leg injury on January 30, 1992 while employed at Bath Iron Works ("BIW"). BIW voluntarily accepted the injury and paid total incapacity benefits. Lamphier has not returned to work since the date of injury. BIW filed a petition for review of incapacity in 1996, seeking to reduce Lamphier's

---

1. Partial incapacity benefits may be terminated after the expiration of 520 weeks pursuant to section 55–B, whereas total incapacity benefits are subject to no durational limitation pursuant to former section 54–B. *See* 39 M.R.S.A. §§ 54–B, 55–B (Supp.1991), *re-pealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8. Moreover, total incapacity benefits can be adjusted for inflation after the third anniversary following the injury, while partial benefits cannot be adjusted. *Id.*

benefits from total incapacity to partial. The Board granted the petition in 1998, based on a finding that Lamphier had regained some partial capacity to work. The Board found specifically that "the Employee does have a work capacity, albeit *for very sedentary and part-time jobs.*" (Emphasis added). The applicable version of section 55–B provides, in pertinent part:

§ 55–B. **Compensation for partial incapacity**

While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between the employee's average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary that the employee is able to earn after the injury, but not more than the maximum benefit under section 53–B. An employee is not eligible to receive compensation under this section after the employee has received 520 weeks of compensation under section 54–B, this section or both sections.

1. **Evaluation standards.** This subsection governs the determination of an injured employee's degree of incapacity under this section.

A. During the first 40 weeks from the date of the injury, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects of the employee's work-related injury. If no such work is available in and around the employee's community or if the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%. The employee has the burden of production and proof on the availability of work.

B. After the first 40 weeks from the date of injury, the employer has the burden of production regarding the employee's capacity to perform work and the burden of producing a list of suitable and available job positions within the State. The employee has the burden of production regarding a good-faith exploration of the positions on the list. The employee bears the ultimate burden of proof to show that the employee was not hired for one of the positions. The employer shall pay reasonable expenses incurred by the employee in conducting the exploration of the positions on the list provided by the employer.

. . . .

39 M.R.S.A. § 55–B (Supp.1991), *repealed by* P.L.1991, ch. 885, § A–7.

▇▇▇ [¶ 3] Section 55–B represents a codification, and a modification, of the so-called "work-search" rule whereby partially incapacitated employees may receive the equivalent of total benefits, or 100% partial benefits. *See Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 928–29 (Me.1996). Pursuant to the work-search rule, because BIW established a partial physical capacity to work, the burden of production shifted to the employee to show the unavailability of work in his local community in order to prove entitlement to 100% partial benefits. *See Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1009 (Me.1980). Although Lamphier had not conducted a work-search, he submitted a labor market survey that the Board concluded satisfied his burden of production to show the unavailability of work within his restrictions. *See e.g., Poitras v. R.E. Glidden Body Shop,* 430 A.2d 1113, 1120 (Me.1981). Consequently, the burden of proof returned to BIW to prove that, notwithstanding the employee's evidence demonstrating the unavailability of work, there is available work within the employee's restrictions in his local community. *See Ibbitson,* 422 A.2d at 1009. The Board concluded that BIW's labor market evidence failed to meet that burden, and, concluded, therefore, that Lamphier is entitled to 100% partial incapacity benefits.

Lamphier contends that because he is also physically unable to perform full-time work in the statewide labor market, he is entitled to total incapacity benefits. We granted Lamphier's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).

[¶ 4] Lamphier argues that it was error to award 100% partial incapacity benefits pursuant to section 55–B, and that the Board was required to award total incapacity benefits pursuant to former section 54–B. In *Adams*, 1999 ME 105, ¶ 17, 735 A.2d at 483, we held that, pursuant to the language of former section 54–B, an employee with a partial physical incapacity may establish entitlement to total incapacity benefits by showing (1) that employment within the employee's restrictions is unavailable in his or her local community, and (2) that he or she is physically unable to perform full-time work in the statewide labor market, regardless of the availability of that work.

[¶ 5] Our decision in *Adams* was expressly restricted to injuries occurring after the enactment of section 54–B in 1987, but prior to the amendment of that statute in 1991. Therefore, it is not necessarily controlling authority for Lamphier's 1992 date of injury. *Id.* at ¶ 17, 735 A.2d at 478. The language of the total incapacity statute that we interpreted in *Adams*, however, is similar and provides in pertinent part:

> While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, . . . .
>
> . . . .
>
> **2. Limitation.** Any employee who has reached maximum medical improvement and is able to perform full-time remunerative work in the ordinary competitive labor market in the State, regardless of the availability of such work in and around his community, is not eligible for compensation under this sec-

tion, but may be eligible for compensation under section 55–B . . . . .

39 M.R.S.A. § 54–B (1989), *amended by* P.L.1991, ch. 615, § D–6, *repealed and replaced by* P.L.1991, ch. 885, § A–7.

[¶ 6] As we recognized in *Adams,* 1999 ME 105, ¶ 9, 735 A.2d at 480, the language of section 54–B is ambiguous. Were we to interpret section 54–B to apply only to cases of total *physical* incapacity, as the opening paragraph suggests, the limitation in subsection 2 would be rendered meaningless. *Id.* An employee with a total physical incapacity, i.e., one who is unable to perform either part-time or full-time work, would, by definition, never be capable of performing *"full-time"* work in the statewide labor market. Our examination of the legislative history disclosed that, at the time section 54–B was enacted in 1987, the Legislature did not understand the term "total incapacity" to be limited to employees with total *physical* incapacity. *Id.* at ¶¶ 13–14, 735 A.2d at 481–82. Instead, the Legislature understood that, pursuant to the work search rule, total incapacity benefits might be available in some cases of partial physical incapacity when work is unavailable to the employee in his or her local community. *Id.* The language of subsection 54–B(2) added to the definition of total incapacity, the requirement that the employee must also be physically incapable of performing full-time work anywhere in the statewide labor market, regardless of the availability of that work. *Id.*

[¶ 7] BIW relies primarily on our language set forth in footnote 3 of *Adams* raising the possibility that our construction of section 54–B might not be applicable to injuries occurring after the effective date of the 1991 amendments:

> It appears that the Legislature itself, in 1991, interpreted section 54–B in the manner used by the Hearing Officer in this case. As a consequence of that interpretation, when the work-search rule was modified in 1991, the amend-

ments were confined to the partial incapacity statute, section 55–B. P.L.1991, ch. 675, Pt. D, § D–7, *codified as* 39 M.R.S.A. § 55–B (Supp.1991) (effective for injuries occurring after October 17, 1991 and before January 1, 1993). Had the Legislature interpreted section 54–B, in 1991, to include a work-search requirement, as it had in 1987 and 1989, it is plausible that the Legislature would have also expressly modified the work-search rule in section 54–B, as it did with section 55–B. These later amendments could lead to the conclusion that the Legislature now interprets total incapacity to mean total *physical* incapacity. However, notwithstanding the possibility that the Legislature's own understanding of total incapacity has "evolved" between the years of 1987 and 1991, in the absence of changes in section 54–B reflecting that evolution, we must interpret the language at issue in section 54–B according to the legislative intent at the time of its enactment. *Id.* at ¶ 17, n. 3, 735 A.2d at 483, n. 3. Relying on this statement, BIW now contends that the statutory amendments of 1991 reflect such an "evolution" in the Legislature's understanding of total and partial incapacity and that, after 1991, total incapacity benefits are only available to employees with total physical incapacity. We are unable to agree.

[¶ 8] In 1991, the Legislature amended both sections 54–B and 55–B. P.L.1991, ch. 675, Pt. D, §§ D–6, D–7, *repealed by* P.L.1991, ch. 884, § A–7. The amendment to section 55–B added sub-parts A and B, quoted above, creating a modified, two-part work-search requirement applicable to the first 40 weeks following the date of injury and thereafter. P.L.1991, ch. 675, Pt. D, § D–6, *repealed by* P.L.1991, ch. 884, § A–7. Subsection 54–B(2) was amended to remove the requirement of maximum medical improvement. P.L. 1991, ch. 675, Pt. D, § D–7, *repealed by* P.L.1991, ch. 884, § A–7. The limitation, as amended in 1991, provides:

> **2. Limitation.** Any employee who is able to perform full-time remunerative work in the ordinary competitive labor market in the State, regardless of the availability of such work in and around his community, is not eligible for compensation under this section, but may be eligible for compensation under section 55–B . . . . .

*Id.* The purpose of removing the "maximum medical improvement" language in section 54–B was to avoid the inevitable uncertainty attendant with fixing a date of maximum medical improvement in workers' compensation proceedings.[2]

[¶ 9] Notwithstanding our suggestion in *Adams* that the Legislature's interpretation of total incapacity may have "evolved" by 1991, we now conclude that we must apply subsection 54–B(2) as that statute was originally enacted, unless and until the Legislature repeals or significantly amends the language of that provision. The 1991 amendment, removing reference to maximum medical improvement, did not significantly alter the meaning of that subsection with respect to the issue in this case, nor can it be interpreted to limit the application of that subsection to employees

---

**2.** Section 55–B was also amended to remove reference to maximum medical improvement. P.L.1991, ch. 675, Pt. D, § D–7, *codified at* 39 M.R.S.A. § 55–B (Supp.1991), *repealed by* P.L.1991, ch. 885, § A–7. The legislative debates discuss the purpose for removing the maximum medical improvement requirement, and why the durational limit was increased from 400 to 520 weeks in section 55–B:

> What we have done this time is we have taken ... maximum medical improvement (which never worked in the first place) and

discarded it. . . . We found, through questioning, that the average for maximum medical improvement was 120 weeks. So, we substituted the predictability of 120 weeks and discarded the unpredictability of maximum medical improvement which allowed us to make some cost savings.

II Legis. Rec. H–1258 (1st Reg. Sess. June 26, 1991) (Statement of Rep. Ruhlin). *See also* L.D.1957, Statement of Fact (115th Legis.1991) (Discussing identical language in a previous proposed but rejected amendment).

with total physical incapacity. We also cannot conclude that the limitation in subsection 54–B(2) is inconsistent with the modified work-search rule adopted in subsections 55–B(1)(A) and (B). As we stated in *Adams*, the subsection 54–B(2) limitation

> is not a codification of the work-search rule. Unlike the work-search rule, which hinges on the *availability* of work, the crucial issue for purposes of subsection 54–B(2) is whether the employee is physically "able to perform" work in the ordinary competitive statewide labor market. This is a physical test and does not relate to the availability of the work to the employee. Accordingly, partially incapacitated employees could only receive total benefits pursuant to section 54–B if they could establish (1) the unavailability of work in their local communities, i.e., the former "work-search" rule, and (2) the inability to perform full-time work in the statewide labor market.

1999 ME 105, ¶ 14, 735 A.2d at 482. The definition in 54–B, requiring physical inability to work, and the modified work-search rule in 55–B(1)(A) and (B), addressing availability of work, are not inconsistent, but complementary.

[¶ 10] Accordingly, our construction of the earlier version of section 54–B in *Adams* applies with equal force to injuries occurring after October 17, 1991 (the effective date of the 1991 amendments), but prior to January 1, 1993 (the effective date of title 39–A). In this case, the employee proved the unavailability of work in his local community and proved that he is physically unable to perform full-time work in the statewide labor market. By virtue of the language of 39 M.R.S.A. § 54–B, he is therefore entitled to total incapacity benefits.

The entry is:

Decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the decision herein.