2001 ME 160

**Frederick H. CHMIELEWSKI**

v.

**J.C. MANAGEMENT**

Supreme Judicial Court of Maine.

Argued: Sept. 13, 2001.
Decided: Nov. 28, 2001.

---

William J. Smith, Esq. (orally), Van Buren, for employee.

Anne–Marie L. Storey (orally), Paul H. Sighinolfi, Esq., Rudman & Winchell, LLC, Bangor, for employer.

Panel: WATHEN, C.J.,* and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] J.C. Management appeals from a decision of a hearing officer of the Workers' Compensation Board granting Frederick H. Chmielewski an inflation adjustment for his 1992 injury. According to the law applicable to a 1992 injury, an employee is entitled to an inflation adjustment for total, but not partial, incapacity benefits. *See* 39 M.R.S.A. §§ 54–B, 55–B (Supp. 1992), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 212, 213, 214 (2001)). Purporting to correct a "clerical mistake" in a 1996 decree, 39–A M.R.S.A. § 318 (2001), the hearing officer found that Chmielewski was entitled to total incapacity benefits and, therefore, entitled to the inflation adjustment. We vacate the decision of the hearing officer.

[¶ 2] There is no dispute that Chmielewski suffered a work-related gradual back injury in 1992, while employed by JCM. JCM voluntarily accepted liability for the injury and paid short-term total incapacity benefits. In 1994 JCM filed a petition for review with the Board, contending that Chmielewski's incapacity had diminished or ended. In 1996 a hearing officer denied JCM's petition, stating, in part:

> I find, based on the employee's medical condition and restrictions, in light of his age, education, demeanor, training skills and work experience that he continues to be totally incapacitated. This incapacity is due to a combination of the

---

* Wathen, C.J., sat at oral argument and participated in the initial conference, but resigned before this opinion was adopted.

work-related injury and the employee's intrinsic limitations rather than the state of the labor market in his community. The *PETITION FOR REVIEW OF INCAPACITY* is denied and the insurer ordered to continue payment commensurate with 100% partial incapacity benefits.

[¶ 3] In 1999 Chmielewski sought an inflation adjustment "pursuant to former Section 54–B [total incapacity] of the Act." Concluding that the apparent award of "100% partial incapacity benefits" in the 1996 decree was a "clerical mistake" pursuant to 39–A M.R.S.A. § 318,[1] the hearing officer agreed and stated:

> It is apparent ... that the hearing officer [in 1996] found that the employee was unable to do any type of remunerative work. She then inconsistently finds that the employee is entitled to 100 percent partial incapacity benefits. The standard to be applied is that if an employee is unable to find work because of a combination of his physical incapacity caused by the injury and educational and vocational background that he is entitled to ... benefits for total incapacity.... Title 39 M.R.S.A. § 54–B(1). *See also Adams v. Mt. Blue Health Ctr.,* [1999 ME 105, ¶ 4,] 735 A.2d 478, 479.[2]

[¶ 4] The hearing officer rejected JCM's argument that the award of 100% partial incapacity is res judicata, stating:

[The 1996 decision] is inconsistent and is ambiguous. The ambiguous paragraph ... [is] where the hearing officer finds all the necessary conditions for an award of total incapacity under Section 54–B, but nonetheless indicates that she is awarding payments commensurate with 100 percent partial incapacity benefits. This obviously makes no sense if one is to read the whole paragraph. [This] is not a case where the prior hearing officer found that the employee had a partial work capacity, but was able to find no work in the community or, given the date of this statute, within the state of Maine as a whole which would justify an award of 100 percent partial incapacity benefits. In this particular case, the finding is that the employee is totally disabled from a physical condition and a locational [sic] standpoint regardless of any work search [he] may or may not have done. This entitles the employee to total benefits under former Section 54–B.

Given this ambiguity, it is apparent that the prior hearing officer obviously made a clerical error when she drafted her decision. Accordingly, the undersigned grants the Petition for Award of Inflation Adjustments....

We granted JCM's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

---

1. Section 318 provides, in pertinent part:
   > . . . .
   > Clerical mistakes in decrees, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the board at any time of its own initiative, at the request of the hearing officer or at the motion of any party and after notice to the parties. During the pendency of an appeal, these mistakes may be corrected before the appeal is docketed in the Law Court and thereafter, while the appeal is pending, maybe corrected with leave of the Court.

   39–A M.R.S.A. § 318 (2001).

2. In *Adams*, we held that partially incapacitated employees may be entitled to total incapacity benefits pursuant to the total incapacity statute only if the employee can establish (1) the unavailability of work within the employee's local community, and (2) the physical inability to perform full-time work in the statewide labor market, regardless of the availability of that work. *Adams v. Mt. Blue Health Ctr.,* 1999 ME 105, ¶ 17, 735 A.2d 478, 483; *see also Lamphier v. Bath Iron Works Corp.,* 2000 ME 121, ¶¶ 9–10, 755 A.2d 489, 493–94.

[¶ 5] The purported ambiguity in the 1996 decision derives from the former hearing officer's conclusion, on the one hand, that the employee "continues to be totally incapacitated," and, on the other hand, the unmistakable language that the "insurer is ordered to continue payment commensurate with 100% partial incapacity benefits."

[¶ 6] While we have previously recognized that the term "total incapacity," by itself, is ambiguous and may refer to either total or 100% partial incapacity, *see, e.g., Lamphier v. Bath Iron Works Corp.*, 2000 ME 121, ¶ 6, 755 A.2d 489, 492; *Toothaker v. Lauri, Inc.*, 631 A.2d 1241, 1243 (Me. 1993), we have never interpreted the phrase "100% partial incapacity," to mean anything other than partial incapacity pursuant to the incapacity statute. The term "100% partial incapacity" is much more precise than "total incapacity." Indeed, it is difficult to imagine how a hearing officer could mistakenly refer to total incapacity pursuant to section 54–B as "100% partial incapacity." Accordingly, we find no ambiguity in the 1996 decree awarding 100% partial incapacity benefits and, therefore, we must conclude that the hearing officer's decision to "clarify" that "ambiguity" is erroneous.[3]

[¶ 7] Even if the hearing officer were correct that the decision to award 100% partial incapacity benefits in 1996 was legally incorrect in light of findings suggesting total incapacity, *see, e.g., Lamphier*, 2000 ME 121, ¶¶ 9–10, 755 A.2d at 493–94; *Adams*, 1999 ME 105, ¶ 17, 735 A.2d at 483, such a legal error does not constitute a "clerical mistake," or an "oversight" or "omission," for purposes of section 318. *See Dunphe v. O'Connor*, 1997 ME 147, 697 A.2d 421.[4]

[¶ 8] Faced with an unambiguous award of 100% partial incapacity benefits in the 1996 decree, it was incumbent upon the employee to bring a timely appeal from that decision. Because Chmielewski was awarded partial incapacity benefits in 1996, and there is no finding that his incapacity had increased in the intervening period, we must conclude that Chmielewski is not entitled to an inflation adjustment pursuant to former section 54–B.

The entry is:

Decision of the hearing officer vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

---

3. Because we conclude that there was no ambiguity or "clerical error" in the 1996 decree, it is not necessary for us to address any further issues that could be raised by these facts, e.g., the authority of a hearing officer to correct a clerical error, oversight or omission, of a previous hearing officer after the expiration of the appeal period.

4. In *Dunphe v. O'Connor*, 1997 ME 147, ¶ 6, 697 A.2d 421, 423, the hearing officer apportioned liability between two injuries and only the earlier injury was subject to an inflation adjustment. *Id.* ¶ 2, 697 A.2d at 422. The hearing officer stated in the opinion: "No cost of living adjustments are payable pursu-ant to *McDonald [v. Rumford. Sch. Dist.*, 609 A.2d 1160, 1161 (Me.1992)]." No appeal was taken from that decision. *Dunphe*, 1997 ME 147, ¶ 3, 697 A.2d at 422–23. Nearly five months later, the hearing officer, responding to a letter from one of the employers, issued a new decision purporting to be a "clarification," and ordering the other employer to pay an inflation adjustment. *Id.* We vacated the latter "clarification" decision, concluding that, because the original decision unambiguously provided that no inflation adjustments were payable, there was "no reasonable basis for finding a clerical mistake." *Id.* ¶ 6, 697 A.2d at 423.