2004 ME 49

**Maryann MOORE**

v.

**CITY OF PORTLAND.**

No. WCB–02–588.

Supreme Judicial Court of Maine.

Argued: April 8, 2003.
Decided: April 8, 2004.

James J. MacAdam, Esq. (orally), MacAdam Law Offices, Portland, for the employee.

Alison Denham, Esq. (orally), James E. Fortin, Esq., Douglas, Denham, Buccina & Ernst, Portland, for the employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] The City of Portland appeals from a decision of a hearing officer of the Workers' Compensation Board (*McCurry, HO*), denying its petition for review. The City contends that the hearing officer erroneously interpreted a previous 1995 decision as awarding Maryann Moore total incapacity benefits, as opposed to partial incapacity benefits. The City also contends that the hearing officer further erred in determining that the City failed in its burden to show that Moore is no longer eligible for total incapacity benefits. We are unpersuaded by the City's contention that the hearing officer wrongly construed the 1995 decision. We conclude that the language of the current decision is contradictory and confusing and that the decision must be vacated. We remand for a determination of the employee's current level of partial incapacity.

## I. BACKGROUND

[¶ 2] The employee, Maryann Moore, suffered a work-related back injury with associated chronic pain syndrome while attempting to lift a patient during her employment at the Barron Center on September 1, 1988. The City of Portland voluntarily paid Moore the equivalent of total incapacity benefits.

[¶ 3] The City filed a petition for review in 1993, and the hearing officer (*McCurry, HO*), in a 1995 decision, denied the petition, finding that although the City had established a part-time work capacity, the employee had met her burden of production to show the unavailability of work in her local community by means of a good faith exploration of the local labor market. The hearing officer's analysis would have been consistent with a finding that Moore is entitled to 100% partial incapacity benefits, but such a finding was not expressly made in his decision; the hearing officer merely denied the employer's petition to reduce benefits.

[¶ 4] In his further findings of fact, the hearing officer found that Moore had reached maximum medical improvement on February 11, 1993. The decision was appealed to this Court. We summarily vacated and remanded on the issue of the inclusion of fringe benefits in the employee's average weekly wage. The hearing officer issued a new decision on remand, once again denying the employer's petition for review, but adjusting Moore's benefits based on the inclusion of fringe benefits in the average weekly wage. No appeal was taken from that decision after remand.

[¶ 5] Pursuant to the law at the time of Moore's 1988 injury, employees with partial incapacity are limited to 400 weeks of benefits from the date of maximum medical improvement. *See* 39 M.R.S.A. § 55–B (Pamph.1988), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001 & Supp. 2003)).[1] Employees receiving total inca-

---

1. Former 39 M.R.S.A. § 55–B, applicable for 1988 injuries, provided, in pertinent part:

 While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to the injury, between his average gross weekly wages, earning or salary before the

pacity benefits pursuant to former section 54–B of Title 39, are not limited to 400 weeks of benefits and are entitled to inflation adjustments. 39 M.R.S.A. § 54–B (Pamph.1988), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (2001)).

[¶ 6] In 2001, the City filed a second petition for review asserting that, pursuant to the 1995 decision, Moore had been receiving 100% partial incapacity benefits for 400 weeks since the date of maximum medical improvement and, therefore, the employer was entitled to terminate benefits. In the alternative, if the hearing officer concluded that Moore had been receiving total incapacity benefits, the City sought to establish that Moore is currently only partially incapacitated. Moore also filed a petition seeking a cost-of-living adjustment, contending that she had been receiving benefits for total incapacity pursuant to the 1995 decision.

[¶ 7] In the decision that is the subject of this appeal, the hearing officer granted Moore's petition and denied the City's petition. The hearing officer first concluded that, pursuant to the 1995 decision, Moore had been awarded benefits for total incapacity pursuant to section 54–B, and therefore, Moore is not subject to the 400–week limitation for partial incapacity benefits. The hearing officer based his conclusion on his interpretation of his 1995 decision, and citing *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 17, 735 A.2d 478, 483, concluded that the previous decision "found that Ms. Moore had carried her work search burden on the employer's petition and was therefore entitled to total compensation."

injury and the weekly wages, earnings or salary which he is able to earn after the injury, but not more than the maximum benefit under section 53–B. Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.

[¶ 8] The hearing officer next made the following findings with respect to Moore's current incapacity:

The burden[s] of production and persuasion on a petition like this are familiar. The employer has produced evidence and the last decree found that Ms. Moore had a partial work capacity. In response, Ms. Moore has carried her burden of production through her work search and, in part, through the statements of the three potential employers who testified on December 6, 2001.

The Employer has not carried its burden of persuasion showing that the continuing effects of Ms. Moore's injury no longer cause work to be totally unavailable to her in her local community. Thus, she is entitled to continuing payments of total compensation.

Based upon the finding that Ms. Moore has reached a point of maximum medical improvement, if the employer had established that "she is able to perform full-time remunerative work in the ordinary competitive labor market in the state," she would no longer be entitled to total compensation....

The records of Dr. Esponnette, as well as Ms. Moore's testimony and demeanor and the surveillance evidence, establish that Ms. Moore is capable of full-time work. The employer has not shown that she is capable of full-time work in the competitive labor market of the state. The Labor Market opinions of Mr. Stevens [the City's labor market analyst] address only the Portland area. Thus the employer has not shown on its petition for review that Ms. Moore is

39 M.R.S.A. § 55–B (Pamph.1988), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001 & Supp.2003)).

barred from receiving further payments of total compensation.

(citation omitted).

[¶ 9] The hearing officer denied the employer's motion for further findings of fact and we granted the City's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

### A. Interpretation of the 1995 Decision

 [¶ 10] The City contends that the hearing officer could not have intended to award total incapacity benefits in the 1995 decision because the hearing officer did not properly analyze the evidence pursuant to our decision in *Adams*, 1999 ME 105, ¶ 17, 735 A.2d at 483. We determine whether the hearing officer erred in interpreting his 1995 decision as awarding total incapacity benefits; we do not address whether the 1995 decision awarding benefits for total incapacity pursuant to former section 54–B was correctly decided. The 1995 decision became a final decision, and was not challenged by appeal. A valid and final decision of the Board is binding on the parties, even if erroneous. *See Ervey v. Northeastern Log Homes, Inc.*, 638 A.2d 709, 710–11 (Me.1994).

[¶ 11] The hearing officer in the 2002 decision is the same hearing officer who decided the case in 1995. We are not persuaded that the hearing officer has committed an error as a matter of law in construing his own 1995 decision as an award of benefits for total incapacity pursuant to former section 54–B.

### B. Present Entitlement of Moore to Total Incapacity Benefits

 [¶ 12] The City also contends that, even if the 1995 decision did award total incapacity benefits, the employee's work-capacity has increased since 1995, and she is no longer entitled to total incapacity benefits. Because the hearing officer's analysis of Moore's current level of incapacity is confusing, and his findings are in conflict, we are unable to properly review the decision subject to this appeal.

Former section 54–B provided, in pertinent part:

> While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 2/3 his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53–B, nor less than $25 weekly.

> . . . .

> **2. Limitation.** Any employee who has reached maximum medical improvement and is able to perform full-time remunerative work in the ordinary competitive labor market in the State, regardless of the availability of such work in and around his community, is not eligible for compensation under this section, but may be eligible for compensation under section 55–B.

39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7.

 [¶ 13] As we stated in *Adams*, an employee can establish entitlement to total incapacity benefits by showing "a total physical incapacity to perform any work, either part-time or full-time." 1999 ME 105, ¶ 4, 735 A.2d at 479. An employee with a partial physical capacity to work can be eligible to receive total incapacity benefits by showing: (1) the unavailability of work in the employee's local community, and (2), if the employee has reached maximum medical improvement, a physical inability to perform full-time work in the statewide labor market, regardless of availability. *Id.* ¶ 17, 735 A.2d at 483.

[¶ 14] In cases involving employees with a partial physical capacity to work, the first part of the test for determining enti-

tlement to total incapacity benefits is the so-called "work search rule," the same test used in determining 100% partial incapacity. *See Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1008–11 (Me.1980). Pursuant to former section 54–B, an employee must establish through a work search or other labor market evidence that no part-time or full-time work is available to the employee in the employee's local community. If, however, the employee has reached maximum medical improvement, the employee is not entitled to total incapacity benefits pursuant to section 54–B, if that employee is physically "able to perform" any full-time job in the statewide labor market, regardless of availability.

[¶ 15] The hearing officer in his 2002 decision stated that the "records of Dr. Esponnette, as well as Ms. Moore's testimony and demeanor and the surveillance evidence, establish that Ms. Moore is capable of full-time work." The City contends that this finding precludes Moore's eligibility for total incapacity benefits. That finding, however, is contradicted by other findings in the same decision.

[¶ 16] For purposes of an employer's petition for review seeking to reduce benefits from total to partial incapacity, section 54–B places the burden on the *City* to demonstrate that Moore is no longer eligible for compensation under section 54–B, by proving that she is *able to perform full-time remunerative work in the ordinary competitive labor market in the State.* The test requires more than a showing of a theoretical work-capacity to work a forty-hour week. The employer must show that a full-time job that the employee can perform exists somewhere in the statewide labor market. In his decision in this case, the hearing officer found that, notwithstanding the employee's apparent ability to perform full-time work, the "employer has not shown that [Moore] is capable of full-time work *in the competitive labor market*

*of the state.*" This language tracks the exact language of the statute and is consistent with the hearing officer's ultimate conclusion that the City has failed in its burden to show that Moore is no longer eligible to receive benefits pursuant to section 54–B.

[¶ 17] The decision is further confusing, however, because of the hearing officer's additional statement that "[t]he Labor Market opinions of Mr. Stevens address only the Portland area." This statement can be construed at least two reasonable ways. The statement could be interpreted to mean that, because the employer's labor market evidence was confined to the Portland area, the evidence was insufficient to meet the burden of *Adams* as a matter of law. This would be an incorrect statement of the law. As long as the employer identifies a single full-time job existing in the ordinary labor market in any community in the state that the employee can physically do (whether or not currently available), the employer has met its burden to demonstrate that the employee can perform full-time work in the statewide labor market; it is not necessary to further canvas the state and provide additional evidence of jobs elsewhere.

[¶ 18] On the other hand, the hearing officer never expressly made a finding concerning the persuasiveness of the employer's labor market evidence. Indeed, the hearing officer's statement that the "employer has not shown that [Moore] is capable of full-time work in the competitive labor market of the state," indicates that the hearing officer was not persuaded by the City's evidence. The additional statement that "[t]he Labor Market opinions of Mr. Stevens address only the Portland area," may be dicta suggesting that, although the employer's labor market was unpersuasive, the City might have had greater success in locating a job within the

employee's capacity if it had expanded the survey to include the entire statewide market, as permitted by the statute.

[¶ 19] When a hearing officer denies a motion for findings of fact, as he did in this case, "we review only 'the factual findings actually made.'" *Carroll v. Celsius Contractors,* 637 A.2d 111, 112 (Me. 1994) (quoting *Ladner v. Mason Mitchell Trucking Co.,* 434 A.2d 37, 40 (Me.1981)). The findings of fact in the hearing officer's decision are confusing and contradictory, and make appellate review of the decision difficult. Accordingly, we vacate the decision and remand for further findings of fact and conclusions of law with respect to the employee's current level of incapacity. *See Gallant v. Boise Cascade Paper Group,* 427 A.2d 976, 978 (Me.1981).

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.